PIERRE CHOTEAU, SENIOR, PLAINTIFF IN ERROR v. MARGUERITE,
A WOMAN OF COLOUR, DEFENDANT.

Jurisdiction. The Supreme Court has not jurisdiction of a case brought by a writ of
error from the supreme court of the state of Mississippi, under the 25th section of
the judiciary act, where the question was whether the appellee was a slave. The
provisions of the treaty by which Louisiana was ceded to the United States, and
in which was a guaranty of the property of persons residing at the time of the
cession within the territory of Louisiana, may be enforced in the courts of the
state of Missouri. The allegation that the treaty has been misconstrued by the
supreme court of the state, in refusing to sanction the claim asserted, will not give
the Supreme Court of the United States jurisdiction in the case.
In the case of Crowell v. Randall, 10 Peters, 368, the Court revised all the cases on
jurisdiction under the 25th section of the judiciary act, and laid down the law as
they wished it to be universally understood.

ERROR to the supreme court of the third judicial district of the
state of Missouri.

In 1825, Marguerite, a woman of colour, by her next friend, Pierre
Barrebeau, filed a declaration in the circuit court for the county of
Jefferson, in the state of Missouri, alleging that Pierre Choteau, sr.,
had beat and bruised her, and unlawfully detained her in prison,
against her will, &c. The object of this proceeding was to establish
that the complainant, the descendant of an Indian woman, Marie
Scipion, was free, and was unlawfully held as a slave by the de-
fendant.

Pierre Choteau appeared to the suit, and pleaded, that Marguerite
was a slave, in his lawful possession, and so detained by him.

The case was submitted to a jury in Jefferson county, and a ver-
dict was found for the plaintiff; which was afterwards set aside by
the court, and a new trial ordered. The suit was afterwards tried
before the same court, and a verdict was given for the defendant.
The plaintiff filed a bill of exceptions; and on a writ of error to the
supreme court of Missouri, the judgment of the circuit court was re-
versed, and the cause was remanded to that court. It was after-
wards remanded to the circuit court of St. Charles county, and was
there tried again before a jury; and a verdict and judgment were ren-
dered in favour of the plaintiff. The defendant, on the trial, moved
the court to instruct the jury:

[Choteau v. Marguerite.]

1st. If the jury find, from the evidence, that the mother of Marie Scipion was an Indian woman, of the Natchez nation, taken captive in war by the French; and that she and her descendants were publicly and notoriously held as slaves, in the province of Louisiana, while the same was held by the French, prior to the year 1769; and that she and her descendants were so publicly and notoriously held as slaves, without interruption, in the said province, until the 30th April, 1303, and thence to the time of the commencement of this suit; the jury ought to find for the defendant.

2d. If the jury find, from the evidence, that the mother of Marie Scipion was an Indian woman, taken captive in war, and reduced to slavery by the French; and that from the time of her capture she and her descendants were publicly and notoriously held as slaves, in the province of Louisiana, while the same was held by the French, before the year 1769, and afterwards, while the same province was in the possession of, and held by Spain and France, until the 30th day of April, 1803, and thence until the commencement of this suit; they ought to find for the defendant.

3d. That Indians taken captive in war by the French, might, lawfully, be reduced and held in slavery in the province of Louisiana; whilst it was held by the crown of France.

4th. If the jury find, from the evidence, that the said Marie Scipion was born while her mother was so held in slavery, within the province of Louisiana, while the same was held by the French, prior to the year 1769; that the said mother was held in slavery, in the province of Louisiana, from the time of her birth until the 30th April, 1803, and thence until the time of her death; then the jury ought to find for the defendant.

5th. If the jury find, from the evidence, that Marie Scipion was born while her mother was held in slavery, and that she, the said Marie Scipion, was publicly and notoriously held as a slave, from the time of her birth until her death, within the territory ceded to the United States, by the treaty between the United States of America and the French Republic, bearing date the 30th April, 1803, and that, at the date of said treaty, the said Marie Scipion was so held as a slave, within the said ceded territory, by an inhabitant thereof; then the jury ought to find for the defendant.

The court refused to give these instructions: and the defendant sued out a writ of error to the supreme court of Missouri, where the judgment of the circuit court of Jefferson county was affirmed.

[Choteau v. Marguerite.]

: The defendant then sued out the writ of error to the Supreme Court of the United States, under the 25th section of the judiciary act of 1789, to the supreme court of Missouri.

Mr. Butler, for the defendant in error, moved to dismiss the writ of error on the ground that the case is not within the provisions of the 25th section of the judiciary act.

He contended that no question had arisen in the case, in which this Court could be called on to interfere with its revising powers. The plaintiff in error claimed that the treaty of Louisiana, of 30th April, 1803, protected him in his property in the defendant, as she was his slave. The question before the circuit court, and which was submitted to the jury, was, whether the plaintiff was a slave; and the jury found that she was free.

Under the 25th sec. of the judiciary act, the jurisdiction of this Court in writs of error to the supreme courts of the state, prevails in those cases in which a treaty of the United States has been drawn in question, and has been misconstrued; or a statute of the United States has been misconstrued and disregarded.

It has been supposed that this suit is within the class of cases cognizable in the Supreme Court of the United States; as the defendant claimed Marguerite as a slave, under the Louisiana treaty.

The first instruction has no reference to the treaty. The counsel sought to have the instructions of the court, that if the plaintiff was always held as a slave, up to the time of the treaty, she continued such. The court held that she could not be a slave. Whether this opinion was right or not, the construction of the treaty was not drawn in question. The protection of the treaty was not denied; and the decision of the court was such as did not make the case within its provisions. The plaintiff had no property in Marguerite, which the treaty operated upon.

But this Court decided that the general provisions of the ordinance of 1787, could not give to the Supreme Court jurisdiction, where rights of property were asserted to have been violated by the decision of a state court. Menard v. Aspasia, 5 Peters, 525.

In the case of Crowell v. Randall, 10 Peters, 368, there is a review of all the cases on the question of the jurisdiction of this Court, in cases from the highest court of the states of the United States. In that, and in all the other cases, the law is laid down to be, that the appellate jurisdiction of this Court can only be sustained when

it appears that the question over which the jurisdiction exists must appear to have been brought before the Court, and decided according to the provisions of the twenty-fifth section; or that by clear and necessary intendment, the question must have arisen and must have been decided.

The very point involved in this case has been decided. In the case of the Mayor of New Orleans v. De Armas, it was held that the protection of the treaty existed, and its provisions were applicable and would be enforced by the courts of the United States, until the territory became a state; afterwards, that protection was given by the constitution and laws of the state. If such a case as this could be entertained, then all questions of property, arising in the states erected in the country acquired by the United States, by the Louisiana treaty, could be brought here; as the guaranty of the treaty applies to all property.

Mr. Key, with whom was Mr. Benton, opposed the motion. He contended that the decision of this Court, in Crowell v. Randall, 10 Peters, 368, did not in any way enlarge the principles which had prevailed before. All the Court are required to do before they take jurisdiction, is to see that the case is such as presented a question cognizable by the Court. The Court, if its consideration was essential to the decision of the cause, will hold that it did arise, and was decided. He argued that the treaty of Louisiana must have been considered by the supreme court of Louisiana in this case.

Mr. Justice STORY said that it had been thought that the decisions of the Court had been misunderstood: and the Court, in the case of Crowell v. Randall, 10 Peters, had revised all the cases; and had laid down the law as they wished it should be universally understood.

The motion to dismiss the case was sustained.