# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2012-DR-00059-SCT

*BLAYDE GRAYSON a/k/a BLAYDE N. GRAYSON*
*a/k/a BLAYDE NATHANIEL GRAYSON a/k/a*
*BLAYDE N. AMODEO*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/08/1997 |
| TRIAL JUDGE: | HON. KATHY KING JACKSON |
| COURT FROM WHICH APPEALED: | GEORGE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF CAPITAL POST-CONVICTION COUNSEL |
| | BY:  GLENN S. SWARTZFAGER |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  JASON L. DAVIS |
| | CAMERON BENTON |
| NATURE OF THE CASE: | CIVIL - DEATH PENALTY - POST CONVICTION |
| DISPOSITION: | MOTION FOR LEAVE TO FILE SUCCESSOR PETITION FOR POST-CONVICTION RELIEF IS DISMISSED AS PROCEDURALLY BARRED.  LEAVE TO PROCEED IN THE CIRCUIT COURT WITH A MOTION FOR ACCESS IS GRANTED - 04/18/2013 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**LAMAR, JUSTICE, FOR THE COURT:**

¶1.     Blayde Grayson was indicted for capital murder while in the commission of burglary

with the intent to steal personal property.  A George County jury found him guilty of capital

murder and, in a separate sentencing proceeding, sentenced him to death. This Court affirmed Grayson's conviction and death sentence. *Grayson v. State*, 806 So. 2d 241 (Miss. 2001) (*Grayson I*), *cert. denied*, *Grayson v. Mississippi*, 537 U. S. 973, 123 S. Ct. 466, 154 L. Ed. 2d 329 (2002). This Court's mandate issued on February 14, 2002.

¶2.    On February 14, 2003, Grayson filed his first petition seeking post-conviction collateral relief (PCR). We denied relief. *Grayson v. State*, 879 So. 2d 1008 (Miss. 2004) (*Grayson II*), *cert. denied, Grayson v. Mississippi*, 543 U. S. 1155, 125 S. Ct. 1301, 161 L. Ed. 2d 122 (2005).

¶3.    Grayson has filed his "Motion for Leave to File Successor Petition for Post-Conviction Relief" and "Motion for Access." The Attorney General has filed responses to the motions and Grayson has replied to the responses.

## FACTS AND PROCEDURAL HISTORY

¶4.    A full recitation of the facts in this case is found in this Court's opinion on direct appeal. *See Grayson I*, 806 So. 2d at 244-47. In summary, on the morning of May 5, 1996, the body of seventy-eight-year-old Minnie Smith was discovered by her son-in-law. Mrs. Smith had been brutally murdered in her own bed. She had been stabbed more than thirty times, suffered blunt-force trauma, and had wounds indicating that she had tried to protect herself from her murderer. After interviewing neighbors, police focused their attention on Blayde Grayson. At that time, Grayson was a fugitive from justice, having walked away from a restitution center in Jackson County several months earlier.

2

¶5.    Police located Grayson in Florida.   While in custody in Florida, Grayson first indicated that he wanted to talk to George County authorities.   After Grayson signed a waiver-of-rights form, Sheriff George Miller of George County, Mississippi, began interviewing Grayson.   After a few minutes, Grayson invoked his right to counsel.

¶6.    Grayson was transported to George County.   A few days later, he asked to speak with authorities, waived his rights, and gave a short, hand-written statement admitting that he was at the scene of the crime, but alleging that he did not kill Smith.   Grayson alleged that his companion, Jason Kilpatrick, had killed Smith, and he asserted that he had nothing to do with the murder.   Two days after that, Grayson waived his rights and gave another statement, this time giving much more detail, but still alleging that Kilpatrick had killed Smith. "At the conclusion of this interview, Grayson agreed to take a polygraph test. That test took place on Friday, May 24, in Jackson. After the polygraph examiner indicated that Grayson had failed the test and accused him of lying, Grayson admitted to killing Smith." *Grayson I*, 806 So. 2d at 246-47.   Grayson signed a waiver-of-rights form and then explained the crime in detail.   The statement also was videotaped.   Grayson explained that he and Kilpatrick were almost out of drugs and they wanted to steal something to sell to get money for drugs.   He broke into Smith's house to steal a shotgun that he knew she owned.   He had known Smith his entire life.   While he was in her house, she awoke and asked "who is there." He "freaked out" and grabbed a knife from her kitchen.   As he approached her bed, she stated "please don't."   After he killed her, he and Kilpatrick fled to Florida where they sold the shotgun.

3

With help from Grayson, police were able to locate the murder weapon and a checkbook that was stolen from Smith's home.

¶7. A George County jury convicted Grayson of capital murder. In a separate sentencing proceeding, the jury sentenced him to death. On appeal to this Court, Grayson asserted the following issues:

I. The trial court erred in failing to grant the Appellant's motion to suppress statements given to law enforcement officers.

II. The trial court erred in denying the Defendant's motion for change of venue.

III. The trial court erred in allowing the introduction of photographs of the victim and of the crime scene into evidence.

IV. The trial court erred in failing to grant the Appellant's motion to declare Mississippi Code Section 97-3-19(e) unconstitutional or in the alternative to preclude the prosecution from relying on Mississippi Code Annotated Section 99-19-101(5)(d) as an aggravating circumstance of the Appellant's possible capital sentence trial.

V. The trial court erred in not granting the Appellant's motion for mistrial based on comments made by potential jurors during voir dire.

VI. The trial court erred in striking jurors Bridget Phillips and Bernard Goff without proper showing that the potential jurors could not follow the law in regard to the death penalty.

VII. The trial court erred in denying the Appellant's motion for funds for private investigator and jury consultant despite repeated requests by the Appellant.

*Grayson I*, 806 So. 2d at 244. We found these issues to be without merit and affirmed. *Id.* at 245.

¶8.    In February and May 2003, Grayson timely filed his first PCR petition and a supplemental PCR petition.  Grayson raised the following claims:

1) The State of Mississippi violated Grayson's fundamental Sixth Amendment right to counsel by delaying the filing of a formal charge for the purpose of obtaining an un-counseled confession.

2) Petitioner's Eighth Amendment rights were violated by the imposition of a sentence of death based on jury instructions which were constitutionally defective in light of *Tison v. Arizona*.

3) Mississippi's death penalty statutes are unconstitutional as applied to the petitioner and as a result, his Eighth Amendment rights under the United States Constitution and the corresponding portions of the Mississippi Constitution were violated.

4) Petitioner was denied his Sixth Amendment right to effective assistance of counsel within the meaning of *Strickland v. Washington*.

5) The sentence rendered against the petitioner is disproportionate and in violation of the Eighth and Fourteenth Amendments of the United States Constitution and the corresponding portions of the Mississippi Constitution.

6) Petitioner was denied his rights guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution and Mississippi Law due to the cumulative effect of the errors at his capital trial.

7) Petitioner's grounds for ineffective assistance of counsel.

8) Sentencing jury verdict does not reflect that the aggravating factors were found beyond a reasonable doubt.

9) Pursuant to Miss. Code Ann. § 47-7-29, imposition of the death sentence is prohibited until such time as Grayson has completed the original sentences meted out for offenses committed before he was at large upon probation and prior to the sentence imposed in this case.

10) The aggravating factors elevating the charge to a capital offense were not included in Grayson's indictment and therefore his death penalty must be vacated.

5

11) The "avoiding or preventing a lawful arrest" aggravating factor was inappropriate in this case and it was fundamental error to present it to the sentencing jury for consideration for the imposition of a sentence of death.

12) The court erred in allowing the jury to consider pecuniary gain and burglary as aggravating circumstances.

We concluded "that no reversible error was committed in the trial of this case" and Grayson's petition was denied. *Grayson II*, 879 So. 2d at 1023-24.

¶9. Grayson has now filed his "Motion for Leave to File Successor Petition for Post-Conviction Relief" and his "Motion for Access." Grayson asserts that his motion is excepted from procedural bars and he raises the following claims:

A. Grayson's death sentence must be vacated, pursuant to the Eighth and Fourteenth Amendments to the United States Constitution, because the jury in sentencing was not instructed that it could consider any and all mitigating evidence beyond that specifically enumerated in the court's instructions.

B. Grayson's death sentence must be vacated, under the Eighth and Fourteenth Amendments to the United States Constitution, because Grayson's jury was not adequately instructed that Grayson would be ineligible for parole if sentenced to life imprisonment.

C. Grayson's rights under the Sixth and Fourteenth Amendments of the United States Constitution were violated, in that he was deprived of the effective assistance of counsel at both the guilt-or-innocence and penalty stages of the trial and on direct appeal.

D. This successive petition is not barred because Grayson was denied the effective assistance of post-conviction counsel during his first attempt to obtain post-conviction relief.

E. Grayson seeks access to his experts for the purpose of evaluation, testing, and any other purpose reasonably necessary for the full litigation of Grayson's post-conviction claims.

6

## ANALYSIS

## STANDARD OF REVIEW

¶10.    In considering a successive motion seeking post-conviction collateral relief, this Court will

> deny relief unless the claims are not procedurally barred and they make a substantial showing of the denial of a state or federal right. Miss. Code Ann. § 99-39-27 (Supp. 2011). Absent an applicable exception, a successive motion for post-conviction relief is procedurally barred. Miss. Code Ann. § 99-39-[27(9)] (Supp. 2011); *Rowland v. State*, 42 So. 3d 503, 507 (Miss. 2010).

*Havard v. State*, 86 So. 3d 896, 899 (Miss. 2012) (quoting *Knox v. State*, 75 So. 3d 1030, 1036 (Miss. 2011)).  If the claims are not procedurally barred,

> The standard of review for capital convictions and sentences is "one of 'heightened scrutiny' under which all bona fide doubts are resolved in favor of the accused." *Flowers v. State*, 773 So. 2d 309, 317 (Miss. 2000) (citations omitted). "This Court recognizes that 'what may be harmless error in a case with less at stake becomes reversible error when the penalty is death.'" *Id*.

*Chamberlin v. State*, 55 So. 3d 1046, 1049-1050 (Miss. 2010).

> *Grayson alleges that this successive petition is not barred because Grayson was denied the effective assistance of post-conviction counsel during his first attempt to obtain post-conviction relief.*

¶11.    Grayson's claim that he was denied the effective assistance of post-conviction counsel during his original PCR proceedings must be addressed first.  This is Grayson's second PCR motion, and it is barred as a successive writ unless it meets an exception to the procedural bar.  Miss. Code Ann. § 99-39-27(9) (Supp. 2012).  Additionally, Section 99-39-5(2)(b) of the Mississippi Code requires motions seeking post-conviction collateral relief in death-penalty cases be filed within one year after the issuance of this Court's mandate on direct

7

appeal. *Puckett v. State*, 834 So. 2d 676, 677-78 (Miss. 2002). A motion filed after that deadline is time-barred unless it meets an exception to the procedural bar. Miss. Code Ann. § 99-39-5(2) (Supp. 2012). *Havard*, 86 So. 3d at 899. Exceptions to these procedural bars are found in caselaw and in the applicable statutes. Miss Code Ann. §§ 99-39-5(2) and 99-39-27(9) (Supp. 2012); *Rowland v. State*, 98 So. 3d 1032, 1036 (Miss. 2012) ("In addition to the statutory exceptions afforded by the Act, we have provided that an exception to the procedural bars exists for errors affecting certain constitutional rights.")

¶12.    The Mississippi Uniform Post-Conviction Collateral Relief Act (the PCR Act) states:

> Direct appeal shall be the principal means of reviewing all criminal convictions and sentences, and the purpose of this article is to provide prisoners with a procedure, limited in nature, to review those objections, defenses, claims, questions, issues or errors which in practical reality could not be or should not have been raised at trial or on direct appeal.

Miss. Code Ann. § 99-39-3(2) (Rev. 2007). Grayson claims that he had a right to the effective assistance of counsel during his first PCR proceedings and that he was denied that right. Clearly, this claim could not have been raised at trial or on direct appeal, so this claim is appropriately raised in a PCR motion. Additionally, this claim "in practical reality could not" have been raised in Grayson's first PCR motion. *Id.*[1]

¶13.    Grayson argues that he did not receive minimally adequate PCR representation guaranteed by state and federal law, and therefore, he can show cause for not presenting his

---

[1]"[I]t is absurd to fantasize that [a] lawyer might effectively or ethically litigate the issue of his own ineffectiveness." *Pitchford v. State*, 45 So. 3d 216, 232 (Miss. 2010) (quoting *Lynch v. State*, 951 So. 2d 549, 551-52 (Miss. 2007); *Read v. State*, 430 So. 2d 832, 838 (Miss. 1982)).

present claims or facts in his earlier PCR petition. Grayson argues that the failure to provide the effective assistance of counsel in PCR proceedings violates his rights to due process and access to the courts. The State argues that there is no right to the effective assistance of post-conviction counsel. The State contends that Grayson cannot meet any exceptions to the procedural bars, and his PCR motion should be dismissed.

¶14. The State is correct that this Court has not recognized a general right to the effective assistance of PCR counsel in every criminal case. However, we have acknowledged that death-penalty cases are different. We have said that the death-penalty petitioner is "entitled to appointed *competent* and *conscientious* counsel to assist him with his pursuit of post-conviction relief." ***Puckett***, 834 So. 2d at 680 (emphasis added). Our laws provide that an accused shall have "representation available at every critical stage of the proceeding against him where a substantial right may be affected." Miss. Code Ann. § 99-15-15 (Rev. 2007). And because this Court has recognized that PCR proceedings are a critical stage of the death-penalty appeal process at the state level, today we make clear that PCR petitioners who are under a sentence of death do have a right to the effective assistance of PCR counsel. ***Jackson v. State***, 732 So. 2d 187, 191 (Miss. 1999)[2]; ***Chamberlin***, 55 So. 3d at 1049.

_____

[2]In ***Jackson,*** this Court held:

> that in capital cases, state post-conviction efforts, though collateral, have become part of the death penalty appeal process at the state level. We therefore find that Jackson, as a death row inmate, is entitled to appointed and compensated counsel to represent him in his state post-conviction efforts.

***Jackson***, 732 So. 2d at 191.

9

Accordingly, the State's argument that there is no right to the effective assistance of PCR counsel in death-penalty cases is without merit.

¶15.    Having determined that Grayson had a right to the effective assistance of PCR counsel during his original PCR proceedings, we now must determine whether that right was violated. If it was violated, then Grayson's first PCR motion was a sham, and he was denied an opportunity to present a meritorious PCR motion.

> The test for ineffective assistance of counsel is well-settled. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In order to prevail on an ineffective-assistance-of-counsel claim, a defendant must first prove that his counsel was deficient, which requires showing that "counsel made errors so serious that [he or she was] not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687, 104 S. Ct. 2052. Secondly, a defendant must prove that the "deficient performance prejudiced the defense," which requires showing that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. Absent both showings, a defendant may not prevail on his claim that his counsel was ineffective. *Id*.
>
> This Court must "'strongly presume that counsel's conduct falls within a wide range of reasonable professional assistance, and the challenged act or omission might be considered sound trial strategy. In other words, defense counsel is presumed competent.'" *Liddell v. State*, 7 So. 3d 217, 219–20 (Miss. 2009). And even where professional error is proven, this Court must determine if there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Mohr v. State*, 584 So. 2d 426, 430 (Miss. 1991).

*Chamberlin*, 55 So. 3d at 1050.

10

¶16. By order entered on April 10, 2002, the Circuit Court of George County, Mississippi, appointed the Mississippi Office of Capital Post-Conviction Counsel (MOCPCC) to represent Grayson in his PCR proceedings. On April 22, 2002, Robert M. Ryan, director of the MOCPCC, filed his entry of appearance as counsel for Grayson with this Court, subsequently filing Grayson's first PCR motion and supplemental motion. On July 11, 2005, Ryan executed an affidavit, which is attached to Grayson's current pleadings, describing his representation of Grayson in detail. Ryan described how the MOCPCC was understaffed, underfunded and overworked. He explained that numerous PCR petitions were due within a short period of time. He stated that minimal, if any, investigation, research, and evaluation were conducted prior to filing the PCR petitions. Ryan stated that, as of January 2003 – about one month before Grayson's PCR petition was due – he was the only attorney employed by the MOCPCC and had done nothing in Grayson's case. Ryan's affidavit states, in part:

16. During all of this transition in early 2003, the walls caved in on numerous cases in which the court declined to grant extensions or to relieve the Office from the cases. As is reflected in the attached chart, I had to file nine cases . . . between February 14, 2003, and May 1, 2003, in which no one had really had the opportunity to look at, let alone *investigate or research*, prior to January 1, 2003, although I had read the transcripts when the cases were first assigned to the Office.

17. Three of these cases, *Grayson*, Simmons, and Knox were filed on the same day, February 14, 2003, *with me having to rely on transcript summaries because I did not have time to even go back and read the transcripts again. I also did not have time to file funding requests, conduct a full investigation, or adequately research the issues. . . .*

11

18. With Grayson . . . on October 21, 2002, I requested an extension from February 14, 2003 to June 16, 2003, because I was "simply unable to act in an ethical manner" due to other duties. The court gave me only until February 14, 2003, to file. On January 30, 2003, I filed another request for an extension informing the court that I was the only attorney in the office because David Voisin had resigned and Terri Marroquin had been discharged. *I had so little information on the case that I was unable to even cite case specific reasons for the need for additional time.* Again, the motion was denied.

19. In addition, specific to Grayson, . . . we did not file any requests for expert assistance and had conducted *very little investigation*. As the Mississippi Supreme Court even pointed out in its opinion denying relief, we were unable, due to the lack of time, to even *interview the trial counsel* on the case and obtain an affidavit from him. . . .

(Emphasis added.)

¶17. Grayson offers affidavits from several employees of the MOCPCC in support of his claims. These affidavits reveal that minimal investigation into Grayson's PCR claims was conducted a few days before the PCR motion was due. The only investigation conducted prior to filing the petition were a few phone calls to jurors who would not discuss the case, one request for records – which were not received – and brief interviews with and affidavits from four of Grayson's family members. The MOCPCC did not conduct any independent discovery or investigation and did not seek expert assistance. Counsel for Grayson did not obtain the files from the prosecutor, from law enforcement, or from the State's experts, even though counsel was entitled to these files pursuant to Rule 22(c)(4)(ii) of the Mississippi Rules of Appellate Procedure. Trial counsel was never interviewed. Even though the Court allowed sixty additional days to file a supplemental PCR, no additional investigation was conducted. This Court found the issues raised in the PCR pleadings were "virtually

12

identical" to those asserted on direct appeal. *Grayson II*, 879 So. 2d at 1012. This Court noted the lack of evidentiary support for many of the claims. *Id.* at 1016.

¶18.    PCR proceedings in death-penalty cases are a critical stage of the death-penalty appeal process at the state level. *Jackson*, 732 So. 2d at 191; *Chamberlin*, 55 So. 3d at 1049. In *Jackson*, this Court held:

> indigent death row inmates are simply not able, on their own, to competently engage in this type of litigation. Applications for post-conviction relief often raise issues which require *investigation, analysis and presentation of facts outside the appellate record*. The inmate is confined, unable to investigate, and often without training in the law or the mental ability to comprehend the requirements of the UPCCRA.

*Id.* at 190 (emphasis added). The petitioner must properly support his PCR claims with legal arguments and evidence or risk a future finding that the claims are procedurally barred. Miss. Code Ann. §§ 99-39-5(1); 99-39-9; 99-39-27(9) (Supp. 2012); *Russell v. State*, 819 So. 2d 1177, 1178-79 (Miss. 2001). A thorough review of the direct-appeal record, the prior PCR pleadings, and the exhibits offered by Grayson in support of his current post-conviction motion reveal that Ryan's performance in the first PCR proceedings was deficient. *Strickland*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

¶19.    For the second prong of an ineffective-assistance-of-counsel claim, we must determine whether counsel's deficient performance prejudiced the petitioner. *Id.* In other words, "this Court must determine if there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Chamberlin*,

13

55 So. 3d at 1050 (quoting *Mohr*, 584 So. 2d at 430). If any of Grayson's present claims for relief are meritorious, then he suffered prejudice. If these claims lack merit, then there was no prejudice. We must proceed to a consideration of the claims raised.

> *Grayson asserts that his death sentence must be vacated, pursuant to the Eighth and Fourteenth Amendments to the United States Constitution, because the jury in sentencing was not instructed that it could consider any and all mitigating evidence beyond that specifically enumerated in the court's instructions.*

¶20. Grayson contends that the jury was not properly instructed that it must consider any mitigation evidence presented. Grayson argues that, if the jury fails to consider mitigating evidence, there is an unacceptable risk that the death penalty will be imposed in spite of factors which warrant a less severe penalty. Grayson argues that his death sentence must be reversed because it violates his rights under the Eighth and Fourteenth Amendments to the United States Constitution.

¶21. The State argues that this claim is barred from consideration by Sections 99-39-5(2)[3] and 99-39-27(9)[4] of the Mississippi Code.[5] The State also argues that Grayson failed to raise this claim at trial or on direct appeal and that the claim is barred pursuant to Section 99-39-21(1) of the Mississippi Code. Grayson fails to address the procedural bars found in Section

[3] The one-year time bar.

[4] The successive-writ bar.

[5] Throughout the State's response, it also argues that Grayson's claims are barred pursuant to Section 99-39-23(6) of the Mississippi Code. Section 99-39-23 applies only when an evidentiary hearing has been conducted. Since there has been no evidentiary hearing in this case, Section 99-39-23(6) of the Mississippi Code simply does not apply in this case.

14

99-39-21 of the Mississippi Code.  Section 99-39-21 of the Mississippi Code states, in pertinent part:

> (1) Failure by a prisoner to raise objections, defenses, claims, questions, issues or errors either in fact or law which were capable of determination at trial and/or on direct appeal, regardless of whether such are based on the laws and the Constitution of the state of Mississippi or of the United States, shall constitute a waiver thereof and shall be procedurally barred, but the court may upon a showing of cause and actual prejudice grant relief from the waiver. . . .
>
> (4) The term "cause" as used in this section shall be defined and limited to those cases where the legal foundation upon which the claim for relief is based could not have been discovered with reasonable diligence at the time of trial or direct appeal.
>
> (5) The term "actual prejudice" as used in this section shall be defined and limited to those errors which would have actually adversely affected the ultimate outcome of the conviction or sentence.
>
> (6) The burden is upon the prisoner to allege in his motion such facts as are necessary to demonstrate that his claims are not procedurally barred under this section.

Miss. Code Ann. § 99-39-21 (Rev. 2007).  Grayson's claim regarding the jury instructions was capable of determination at trial and on direct appeal.  Miss. Code Ann. § 99-39-21(1) (Rev. 2007); *Howard v. State*, 945 So. 2d 326, 362 (Miss. 2006).  The trial transcript reveals that counsel for Grayson did not object to the jury instructions about which Grayson now complains.  Additionally, Grayson did not assert any claims regarding jury instructions in his direct appeal.  *Grayson I*, 806 So. 2d at 244.  This claim is waived unless Grayson can show "cause" and "actual prejudice" as defined in the statute.  Since "the legal foundation upon which the claim for relief is based" was discoverable "with reasonable diligence at the time

15

of trial or direct appeal," Grayson cannot show "cause." Miss. Code Ann. § 99-39-21(4) (Rev. 2007). The statute requires Grayson to show both "cause" and "actual prejudice." Since Grayson cannot show "cause," the claim is procedurally barred. Miss. Code Ann. § 99-39-21(1) (Rev. 2007); *Wiley v. State*, 750 So. 2d 1193, 1210 (Miss. 1999) (citing *Foster v. State*, 687 So. 2d 1124, 1140 (Miss. 1997)).

¶22. Procedural bar notwithstanding, this claim does not entitle Grayson to relief. We have stated:

> In the sentencing phase of a capital murder trial, the stakes are life and death. A defendant is permitted to introduce virtually any relevant and reliable evidence touching upon the defendant's background and character, or the crime itself, which is offered as a basis to persuade a jury to return a sentence of less than death. We caution prosecutors and trial judges about limiting mitigation evidence offered by a defendant when it is presented fairly, and is relevant to the defendant's character, background, or the circumstances surrounding the crime.

*Fulgham v. State*, 46 So. 3d 315, 336 (Miss. 2010). During the sentencing proceeding, "evidence may be presented as to any matter that the court deems relevant to sentence, and shall include matters relating to any of the aggravating or mitigating circumstances. . . . The state and the defendant and/or his counsel shall be permitted to present arguments for or against the sentence of death." Miss. Code Ann. § 99-19-101(1) (Rev. 2007). After hearing all the evidence, the jury is required to consider whether mitigating circumstances exist which outweigh the aggravating circumstances. Miss. Code Ann. § 99-19-101 (Rev. 2007).

¶23. Grayson asserts that the jury was given only two allegedly inadequate instructions regarding the consideration of mitigation evidence. Instruction S-2A stated, in pertinent part:

16

You have found the Defendant guilty of the crime of Capital Murder. You must now decide whether the Defendant will be sentenced to death or life imprisonment. In reaching your decision, *you may objectively consider the detailed circumstances of the offense for which the Defendant was convicted, and the character and record of the Defendant himself.* You should consider and weigh any aggravating and mitigating circumstances, as set forth later in this instruction, but you are cautioned not to be swayed by mere sentiment, conjecture, sympathy, passion, prejudice, public opinion, or public feeling.

. . . [The jury was instructed regarding the factors found in Section 99-19-101(7) of the Mississippi Code.]

Next to return the death penalty, you must find that the mitigating circumstances – those which tend to warrant the less severe penalty of life imprisonment – do not outweigh the aggravating circumstances – those which tend to warrant the death penalty.

. . . [The jury was instructed regarding the applicable statutory aggravating circumstances.]

If one or more of the above aggravating circumstances is found to exist, then you must consider whether there are mitigating circumstances which outweigh the aggravating circumstance(s). Consider the following elements of mitigation in determining whether the death penalty should not be imposed:

(1) Whether the capacity of the Defendant to appreciate the criminality of his conduct was substantially impaired.

(2) The age of the Defendant at the time of the crime.

If you find from the evidence that one or more of the preceding elements of mitigation exists, then you must consider whether it (or they) outweigh(s) or overcome(s) the aggravating circumstance(s) that you previously found. In the event that you find the mitigating circumstance(s) do not outweigh or overcome the aggravating circumstance(s), you may impose the death penalty sentence. Should you find that the mitigating circumstance(s) outweigh or overcome the aggravating circumstance(s), you shall not impose the death sentence.

The verdict you return must be written on a separate sheet of paper signed by the foreman. . . .

17

(Emphasis added.) Instruction D-2(A) stated:

> The Court instructs the jury that you may consider the following mitigating circumstances when considering your sentencing option:
>
> 1. The capacity of the defendant to appreciate the criminality of his conduct was substantially impaired.
>
> 2. The age of the defendant at the time of the crime.

Grayson argues that, based on these instructions, the jurors may have believed that they could not take into consideration any mitigation evidence other than evidence regarding his capacity to appreciate the criminality of his crime and his age at the time of the crime. Grayson argues that the testimony of his mother and grandmother would have been given no effect or consideration by the jury, because that testimony did not, for the most part, relate to his mental state or his age at the time of the crime. Grayson argues that the jury should have been given a catch-all instruction directing the jury to consider and weigh all of the evidence presented in mitigation. Grayson asserts that his death sentence must be vacated on this basis.

¶24. We considered a similar argument in *Jordan v. State* and recognized that this Court has approved the following catch-all instruction dealing with the consideration of mitigating evidence:

> Consider the following elements of mitigation in determining whether the death penalty should not be imposed: Any matter – any other aspect of the defendant's character or record, any other circumstances of the offense brought to you during the trial of this cause which you, the jury, deem to be mitigating on behalf of the defendant.

18

*Jordan*, 912 So. 2d 800, 820 (Miss. 2005) (quoting *Scott v. State*, 878 So. 2d 933, 983 (Miss.

2004)). We held: "[e]ven though the jury did not get a standard catch-all instruction[6]. . . ,

*taking the instructions as a whole*, the jury was instructed that it should consider and weigh

all of the evidence in mitigation of punishment." *Id.* at 820-21 (emphasis added).

¶25.   Grayson's jury also was given Instruction S-1, which states:

> The Court instructs the Jury that it must be emphasized that the procedure that
> you must follow is not a mere counting process of a certain number of
> aggravating circumstances versus the number of mitigating circumstances.
> Rather, *you must apply your reasoned judgment as to whether this situation
> calls for life imprisonment or whether it requires the imposition of death, in
> light of the totality of the circumstances present.*

(Emphasis added.) Taking Grayson's jury instructions as a whole, "we cannot conclude that

the jury was unconstitutionally foreclosed from considering all mitigating circumstances."

*Berry v. State*, 703 So. 2d 269, 287 (Miss. 1997); *see also Berry v. State*, 882 So. 2d 157,

169 (Miss. 2004).

¶26.   Had Grayson raised this claim in his first PCR motion, relief would have been denied.

Therefore, Ryan's failure to raise this claim in the original PCR proceedings did not

prejudice Grayson. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674. This

claim does not meet an exception to the procedural bars and should be dismissed.

> *Grayson asserts that his death sentence must be vacated under the Eighth and
> Fourteenth Amendments to the United States Constitution, because Grayson's
> jury was not adequately instructed that Grayson would be ineligible for parole
> if sentenced to life imprisonment.*

---

[6] The use of the standard catch-all instruction is encouraged.

19

¶27.   Grayson argues that the jury had to be instructed that if Grayson was sentenced to life in prison, his sentence would be without parole.  Grayson contends that the jury was not adequately instructed and that it may have misunderstood the possible sentences.  The State points out that this claim was capable of determination at trial or on direct appeal and is procedurally barred. Miss. Code Ann. § 99-39-21(1) (Rev. 2007); *Wiley*, 750 So. 2d at 1208 (citing *Foster*, 687 So. 2d at 1140).

¶28.   Procedural bar notwithstanding, the jury was given the following instruction:

> The Court instructs the jury that you are under no obligation to impose the death penalty.  That is simply one option.  You may also consider a sentence of life, without parole.

Additionally, Grayson's trial counsel discussed "life without parole" at length during his closing argument.

¶29.   Grayson contends that the jury instruction was insufficient and that his death sentence must be vacated.  We disagree.  The jury was informed adequately that a life sentence would be without parole.  This claim is without merit.  *See Jordan v. State*, 918 So. 2d 636, 651 (Miss. 2005).

¶30.   Since this claim lacks merit, Ryan's failure to raise this claim in the original PCR proceedings did not prejudice Grayson.  *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674.  This claim does not meet an exception to the procedural bars and should be dismissed.

> *Grayson argues that his rights under the Sixth and Fourteenth Amendments of the United States Constitution were violated, in that he was deprived of the*

*effective assistance of counsel at both the guilt-or-innocence and penalty stages of the trial and on direct appeal.*

¶31. At trial, Grayson was represented by David M. Ishee of Pascagoula and William T. Bailey Sr. of Lucedale. Ishee also represented Grayson in his direct appeal. Grayson argues that "[c]ounsel at all stages fell below the standard of effective assistance of counsel as set forth in *Strickland v. Washington*"and contends that counsel rendered ineffective assistance in fourteen areas. The State argues that all of Grayson's claims are procedurally barred pursuant to Sections 99-39-5(2) (time bar) and 99-39-27(9) (successive-writ bar) of the Mississippi Code. Additionally, the State asserts that these "claims were either disposed of on prior review and are therefore *res judicata*,[7] or they constitute similar claims raised under a different legal theory and are therefore barred by [Section 99-39-21(2) of the Mississippi Code,]" or they were capable of being raised at trial or on direct appeal and are barred by Section 99-39-21(1) of the Mississippi Code. We consider each claim raised.

> 1. *Failure to timely and adequately support the funding motion for an investigator to interview a potentially exculpatory witness in Dade County, Florida, related to the guilt-or-innocence issues, and failure to adequately preserve this issue at trial for presentation on appeal*

¶32. Grayson's defense theory at trial was that Jason Kilpatrick killed Smith and that Grayson's confession was coerced and was false. Grayson now agues that, despite the importance of investigating Kilpatrick, trial counsel did not take adequate steps to obtain

---

[7]Miss. Code Ann. § 99-39-21(3) (Rev. 2007).

funding to investigate Kilpatrick.[8]  Grayson points out that trial counsel requested funding

for investigative assistance four times.  The trial court granted limited funds for one

investigator.  Grayson argued on direct appeal that the denial of funding was reversible error.

We concluded that the trial court did not abuse its discretion in denying the motions for

funds.  *Grayson I*, 806 So. 2d at 254-55.

¶33.  Grayson now argues that counsel failed adequately to present sufficient information

to the trial court and the appellate court and failed adequately to preserve this issue for direct

appeal.  Grayson asserts that, had counsel provided concrete reasons to support the requests,

"there is a reasonable probability that the trial court would have authorized funding and that

Grayson would have developed and presented evidence regarding Kilpatrick's role in the

offense."  He further asserts that there is a reasonable probability that the results of the

proceedings would have been different.

¶34.  In support of this claim, Grayson offers the affidavit of Richard Dale Rogers, a

prisoner serving a life sentence in Florida.  The affidavit was executed on April 22, 2005.

Rogers states that in 1995[9] Kilpatrick was his cellmate and Kilpatrick told him "how the

crime happened."  Rogers's affidavit states, in pertinent part:

---

[8]The record reveals that Kilpatrick was transported to George County prior to the trial and returned to Florida upon its conclusion.  Neither Grayson nor the State called him as a witness.

[9]The crime occurred in May 1996.  Kilpatrick could not have confessed to a crime that had not yet happened.

22

He and Grayson went to the victim's house and were talking with her. Kilpatrick took her to the restroom in her wheelchair and pushed her in while Grayson was going through the house. When she tried to get out, he grabbed her chair and tipped it over and bent one of the wheels. She fell out and banged her head pretty hard. She was knocked out. She came to and started screaming. The next thing he knew he had blood all over him and everywhere and the knife was in his hand.

Grayson had been carrying things out to the car while this was going on. They got a shotgun, jewelry, not much cash and some antique things. They went back to Pensacola to sell the stuff. There was camping equipment, too. Kilpatrick also told me he put the knife in the backyard near the porch.

¶35. Grayson is attempting to recast his argument made on direct appeal – regarding the denial of investigative funds – under a different legal theory, ineffective assistance of counsel. Section 99-39-21(2) of the Mississippi Code provides:

(2) The litigation of a factual issue at trial and on direct appeal of a specific state or federal legal theory or theories shall constitute a waiver of all other state or federal legal theories which could have been raised under said factual issue; and any relief sought under this article upon said facts but upon different state or federal legal theories shall be procedurally barred absent a showing of cause and actual prejudice.

Miss. Code Ann. § 99-39-21(2) (Rev. 2007). This claim is procedurally barred, unless Grayson can show "cause" and "actual prejudice." *See* Miss. Code Ann. 99-39-21(4) and (5) (Rev. 2007).

¶36. The statutory definition of "actual prejudice" and the definition of prejudice pursuant to **Strickland** are similar. **Strickland**, 466 U.S. at 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674. Even if Grayson could show that trial counsel's performance was deficient, Rogers's affidavit is not enough to prove prejudice. Although Rogers's affidavit implicates Grayson, Rogers's description of the crime is not consistent with the information about the crime

23

found in the record. Additionally, Grayson confessed to murdering Smith and provided details which are consistent with the evidence at the crime scene. Even if Rogers's hearsay testimony had been admitted into evidence, Grayson has failed to show a reasonable probability that the result of the proceedings would have been different. *Chamberlin*, 55 So. 3d at 1050. This claim is procedurally barred. Miss. Code Ann. § 99-39-21(2) (Rev. 2007).

¶37. Notwithstanding the procedural bar, Grayson has failed to show that his trial/appellate counsel was constitutionally ineffective. Since this claim lacks merit, Ryan's failure to raise this claim in the original PCR proceedings did not prejudice Grayson. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674. This claim does not meet an exception to the procedural bars and should be dismissed.

> 2. *Failure to timely and adequately seek funding, failure to preserve the record with respect to the denial of funding requests, failure to otherwise adequately investigate the issues related to guilt-or-innocence, and failure to seek a continuance*

¶38. Grayson next argues that trial counsel was constitutionally ineffective for failing to request other funds, failing to establish a record of *ex parte* discussions to preserve the issues for appeal, and failing to seek a continuance. Grayson contends that counsel failed to conduct an adequate investigation. Grayson asserts that the failure to secure Richard Dale Rogers's testimony proves prejudice.

¶39. We consistently have recognized that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Wilson*, 81 So. 3d at 1075 (quoting *Strickland*, 466 U.S. at 691, 104 S. Ct.

24

2052, 80 L. Ed. 2d 674). Other than Rogers's affidavit, Grayson has failed to offer sufficient proof of what additional funds or a continuance would have yielded and has failed to offer sufficient proof of what a proper investigation would have revealed. Based on Rogers's affidavit alone, even if trial counsel's performance was deficient, Grayson has failed to show a reasonable probability that the result of the proceedings would have been different. *Chamberlin*, 55 So. 3d at 1050.

¶40. Grayson has failed to show that his trial/appellate counsel was constitutionally ineffective. Since this claim lacks merit, Ryan's failure to raise this claim in the original PCR proceedings did not prejudice Grayson. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674. This claim does not meet an exception to the procedural bars and should be dismissed.

> 3. *Failure to timely and adequately investigate and present evidence and argument in support of Grayson's motion to suppress his statements during both the pretrial hearing and in the presence of the jury during trial*

¶41. Grayson argues that trial/appellate counsel failed adequately to assert that Grayson's statements should have been suppressed because he was denied his right to counsel and because the confession was involuntary. Grayson argues that his three statements to police were inadmissible and that counsel was ineffective in his arguments at trial to suppress the statements and in his arguments on direct appeal.

¶42. Grayson asserts that he invoked his right to counsel during his first interview, that he was then held without counsel and placed on suicide watch. He contends police violated his

25

right to counsel by continuing to interrogate him, and any information or evidence obtained from these illegal interrogations should have been suppressed. He also asserts that his confession was coerced. Grayson contends that counsel's efforts at trial and on appeal to attack his statements were inadequate. Grayson acknowledges that we rejected arguments regarding his statements on direct appeal. He asserts that this "Court's determination is flatly contradicted in a number of respects by the evidence, which trial and appellate counsel failed to adequately present and argue."

¶43. On direct appeal, we considered Grayson's arguments regarding his statements and rejected them. *Grayson I*, 806 So. 2d at 247-49. We again rejected similar arguments in Grayson's first PCR proceedings. *Grayson II*, 879 So. 2d at 1012-13. Grayson is attempting to recast his argument on direct appeal under a different legal theory – ineffective assistance of counsel. This claim is procedurally barred. Miss. Code Ann. § 99-39-21(2) (Rev. 2007).

¶44. Without waiving the procedural bar, Grayson is not entitled to relief. Grayson asserts in his motion that, after he requested counsel, he did not initiate contact with the police sufficient to waive his invocation of the right to counsel. He contends that, when he requested to speak to officers, it was for very limited purposes and was not a waiver of his request for counsel. However, Grayson fails to offer sufficient evidence in support of his assertions. In fact, his own affidavit offered in support of his motion does not even mention the facts surrounding his statements to police. Upon a thorough review of the direct-appeal record, the prior PCR pleadings and the exhibits offered by Grayson in support of his current post-conviction motion, it is clear that Grayson has failed to show that counsel's performance

26

was deficient or that any such deficiency prejudiced his case. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674; *Walker v. State*, 863 So. 2d 1, 17 (Miss. 2003).

¶45.    Since this claim lacks merit, Ryan's failure to raise this claim in the original PCR proceedings did not prejudice Grayson. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674. This claim does not meet an exception to the procedural bars and should be dismissed.

> 4.    *Failure to request DNA testing on fingernail scrapings from the victim and blood samples from the crime scene*

¶46.    Grayson contends that fingernail scrapings from the victim were collected and submitted to the Mississippi Crime Laboratory. He argues that counsel was ineffective for failing to request DNA testing. He also "specifically requests this Court remand this matter to the circuit court for proceedings related to DNA testing pursuant to [Section 99-39-5 of the Mississippi Code.]"

¶47.    This issue was considered and rejected in Grayson's first PCR proceedings. *Grayson II*, 879 So. 2d at 1017. We held:

> ¶ 22. Grayson next asserts that counsel was ineffective because they did not submit blood samples and the fingernail scrapings of the victim for DNA analysis. In his statements to law enforcement, Grayson implicated Jason Kilpatrick as the murderer. Grayson contends that had DNA testing been performed, it "might very well have linked Kilpatrick to the crime scene." The State argues that it was sound trial strategy not to have DNA testing done. In his statements to police, Grayson admits to being at the victim's home with Kilpatrick at the time of the crime. Even if DNA analysis revealed Kilpatrick's involvement, it would not prove Grayson's innocence. Additionally, pointing the finger at Kilpatrick, who was not called during trial, was one of the main defense strategies. By conducting DNA testing it may have removed the "empty chair" defense counsel was trying to fill with Kilpatrick.

27

¶ 23. Grayson has not shown that counsels' failure to conduct DNA testing was deficient performance. **Strickland**, 466 U.S. at 688, 104 S. Ct. at 2064-54. Additionally, Grayson has not demonstrated a reasonable probability that the results of the guilt or sentencing phase of the trial would have been different had DNA testing been done. **Walker v. State**, 863 So. 2d at 12-13 (citing **Mohr v. State**, 584 So. 2d 426, 430 (Miss. 1991)). FN3. Accordingly, Grayson cannot show prejudice. **Strickland**, 466 U.S. at 694, 104 S. Ct. at 2068. FN4.

> FN4. In its response, the State points out that post-conviction counsel has not requested DNA testing be done and does not contend that it has been conducted and it exonerates Grayson. In his reply, *Grayson "request[s] that test samples of tissue, fluid or other potential DNA bearing evidence in the hands of the State be made available to Grayson for examination testing by an independent laboratory. Grayson further requests funds be made available for such examination and testing." Grayson's request will not be considered as it is not properly before this Court.* M.R.A.P. 22 provides the procedure for requesting expenses such as this. If Grayson wants the funds for such examination and testing, he should file a proper motion pursuant to M.R.A.P. 22.

**Id.** (footnote omitted) (emphasis added).

¶48.  Following the issuance of the opinion in **Grayson II**, Grayson still has not filed a proper motion for testing. *See* Miss. Code Ann. § 99-39-5(1) (Supp. 2012). Since this claim lacks merit, Ryan's performance did not prejudice Grayson. **Strickland**, 466 U.S. at 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674. This claim does not meet an exception to the procedural bars and should be dismissed.

> 5. *Distancing themselves from Grayson and repeatedly informing the jury that they were appointed counsel present only because they were "ordered to come here to represent him"*

¶49.  Grayson contends that his trial counsel violated his duty of loyalty to Grayson and "effectively stacked the odds against him since his own counsel conveyed that he did not

28

want to be present to assist Grayson." Grayson then cites several instances in the record where counsel stated that he was appointed to represent Grayson. Grayson asserts that counsel told witnesses "almost apologetically" that he had been appointed.

¶50. The record reveals that Grayson has taken each of these instances completely out of context. The mere mention that counsel is appointed does not indicate that counsel was not loyal to his client. Additionally, while we have condemned the practice of counsel informing the jury that he was appointed, we have not held that it is reversible error. *Sanders v. State*, 429 So. 2d 245, 252 (Miss. 1983); *Browning v. State*, 450 So. 2d 789, 791 (Miss. 1984). Grayson has failed to show that trial counsel's performance was deficient, and he has failed to show that any such deficiency prejudiced his case. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674; *Walker*, 863 So. 2d at 17.

¶51. Since this claim lacks merit, Ryan's failure to raise this claim in the original PCR proceedings did not prejudice Grayson. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674. This claim does not meet an exception to the procedural bars and should be dismissed.

> 6. *Failure to adequately review transcriptions of Grayson's audiotaped and videotaped statements admitted into evidence, adequately review the videotape of Grayson's May 24 statement admitted into evidence, and object to inadmissible portions and improper omissions or, alternatively, failure to adequately preserve the record for appeal on these issues*

¶52. Grayson asserts that "[a]lthough counsel litigated concerning the admissibility of Grayson's statements, counsel failed to adequately review the evidence once the trial court denied the suppression motions to ensure that inadmissible portions of the statements and

29

improper omissions were addressed and adequately preserved on the record for appeal." Grayson admits that counsel objected several times regarding Grayson's three statements to police. Grayson contends that these objections were inadequate, and because of counsel's deficient performance, the jury was improperly allowed to hear that Grayson had purchased cocaine once he returned to Florida after the crime. Grayson also contends that the jury was improperly allowed to hear that Grayson was wanted in Mississippi and that it related to the Restitution Center in Pascagoula. Grayson asserts that he was prejudiced by the jury's knowledge of irrelevant and damaging information.

¶53. Grayson argued on direct appeal that the trial court erred in failing to suppress Grayson's statements because they were obtained in violation of his right to counsel and because they were involuntary. *Grayson I*, 806 So. 2d at 247-49. Grayson "made the same arguments" in his first PCR proceedings. *Grayson II*, 879 So. 2d at 1012. The admissibility of information regarding Grayson's purchase of drugs after the crime and the fact that he had escaped from the Restitution Center were not discussed.

¶54. Rule 404(b) of the Mississippi Rules of Evidence provides:

> **(b) Other Crimes, Wrongs, or Acts**. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as *proof of motive*, *opportunity*, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

M.R.E. 404(b) (emphasis added). Grayson admitted in his confession that he broke into Smith's house to steal a shotgun because he needed money to buy drugs. The fact that he actually purchased drugs after he returned to in Florida was admissible as proof of motive.

30

M.R.E. 404(b). Even if trial/appellate counsel's performance was deficient in failing to object to this evidence, the objection would have been properly overruled, and Grayson has failed to show that any alleged deficient performance prejudiced him. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674; *Walker*, 863 So. 2d at 17.

¶55.    Rule 404(b) may also permit the admission of the evidence that Grayson had escaped from the Restitution Center. This evidence may be admissible to show that Grayson had the opportunity to commit the crime. M.R.E. 404(b). Even if trial/appellate counsel's performance was deficient in failing to object to the evidence of the escape from the Restitution Center, Grayson has failed to offer sufficient proof of prejudice. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674; *Walker*, 863 So. 2d at 17. Grayson was advised of his rights several times, and he gave a detailed confession, in which he admitted that he murdered Smith. Even if the brief reference to the Restitution Center in Pascagoula had been redacted from Grayson's confession, the jury still would have heard the rest of the confession, including Grayson's detailed description of the murder. Grayson has failed to show that "there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.'" *Chamberlin*, 55 So. 3d at 1050 (quoting *Mohr*, 584 So. 2d at 430).

¶56.    We consistently have held that "[d]efense counsel is presumed competent." *Davis v. State*, 897 So. 2d 960, 965 (Miss. 2004) (citing *Washington v. State*, 620 So. 2d 966 (Miss. 1993)). "Perfect representation in hindsight is not the standard, and the accused is not entitled to errorless counsel." *Davis*, 897 So. 2d at 966 (citing *Stringer v. State*, 454 So. 2d 468, 476

31

(Miss. 1984). "The Sixth Amendment guarantees reasonable competence, *not perfect advocacy judged with the benefit of hindsight." Davis*, 897 So. 2d at 966-67 (emphasis added) (quoting *Yarborough v. Gentry*, 540 U.S. 1, 124 S. Ct. 1, 4, 157 L. Ed. 2d 1 (2003), citing *Bell v. Cone*, 535 U.S. 685, 702, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002); *Kimmelman v. Morrison*, 477 U.S. 365, 382, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986); *Strickland*, 466 U.S. at 689, 104 S. Ct. 2052.

¶57.    Upon a thorough review of the direct-appeal record, the prior PCR proceedings, and the evidence offered by Grayson in support of his current post-conviction motion, we find that he has failed to show that his trial/appellate counsel rendered ineffective assistance of counsel. *Strickland*,  466 U.S. at 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674.  Since this claim lacks merit, Ryan's failure to raise this claim in the original PCR proceedings did not prejudice Grayson. *Id.*  This claim does not meet an exception to the procedural bars and should be dismissed.

> 7.      *Failure to object to the State's closing argument during the trial, which vouched for Jason Kilpatrick and included the prosecutor's personal statements and information not properly admitted into evidence*

¶58.    Grayson argues that the prosecution made several improper statements and arguments during closing argument.  Grayson contends that the prosecutor improperly vouched for Kilpatrick's innocence and asserted facts not in the record.  Grayson argues that trial/appellate counsel's failure to object to these statements and arguments was constitutionally ineffective assistance of counsel.

¶59.    The record reveals that counsel for Grayson argued in closing arguments that Kilpatrick was the real murderer; that Grayson's confession was coerced and involuntary; and

32

that Grayson's fingerprints were not found at the crime scene. The prosecutor responded to Grayson's arguments about Kilpatrick by pointing out that Grayson's theory did not make sense. If Kilpatrick had been the one to break into the house, then Smith did not know him, and he could have escaped without killing her, because she would not have been able to identify him. The prosecutor then stated:

> And this is what the police looked for that morning. Why? Why this? Why that? Explain it. They are doing the same thing at this time for Jason Kilpatrick in Florida. We can't even put him in Mississippi. If we could, he would be sitting over there. Law enforcement from two states are involved in this. And that's why he's not here. But he's going to kill somebody he ain't got no reason to?

The prosecutor responded to the argument regarding the lack of fingerprints by pointing out that, at the time Grayson made his statements to police, the fingerprints collected at the crime scene had not yet been analyzed. The prosecutor theorized that Grayson may have stated that Kilpatrick wore gloves in an effort to explain the lack of Kilpatrick's fingerprints at the crime scene.

¶60.    Grayson agues that both of these arguments were objectionable and that defense counsel was deficient in failing to object. In analyzing the prosecutor's closing argument, "it is necessary to examine the surrounding circumstances and be careful not to take a statement out-of-context." *Spicer v. State*, 921 So. 2d 292, 318 (Miss. 2006) (citing *Williams v. State*, 522 So. 2d 201, 209 (Miss. 1988)). In discussing alleged improper closing argument by a prosecutor, we have held:

> Trial counsel is granted wide latitude during closing argument. "[T]he court cannot control the substance and phraseology of counsel's argument; there is

33

nothing to authorize the court to interfere until there is either abuse, unjustified denunciation, or a statement of fact not shown in evidence." "To constitute a due process violation, the prosecutorial misconduct must be '"of sufficient significance to result in the denial of the defendant's right to a fair trial."'"

*Manning v. State*, 735 So. 2d 323, 345 (Miss. 1999) (internal citations omitted). Grayson has taken the prosecutor's discussion of the fingerprint evidence out of context. If trial/appellate counsel had objected to that argument, the objection would have been overruled. Grayson has failed to show that any alleged deficient performance prejudiced him. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674; *Walker*, 863 So. 2d at 17.

¶61. Even if trial/appellate counsel should have objected to the prosecutor's statements regarding why Kilpatrick was not on trial with Grayson, Grayson has failed to offer sufficient proof of prejudice. Grayson was advised of his rights several times, and he gave a detailed confession, in which he admitted that he murdered Smith. Even if the jury had been instructed to disregard the prosecutor's statements about Kilpatrick, it still would have considered Grayson's confession. Grayson has failed to show that "there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.'" *Chamberlin*, 55 So. 3d at 1050 (quoting *Mohr*, 584 So. 2d at 430).

¶62. Upon a thorough review of the direct-appeal record, the prior PCR proceedings, and the evidence offered by Grayson in support of his current post-conviction motion, we find that he has failed to show that his trial/appellate counsel rendered ineffective assistance of counsel. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674. Since this claim lacks merit,

34

Ryan's failure to raise this claim in the original PCR proceedings did not prejudice Grayson.

*Id.* This claim does not meet an exception to the procedural bars and should be dismissed.

> 8. *Failure to object to the submission to the jury of an instruction that allowed a verdict of guilty on the capital-murder charge without a finding that Grayson committed every element of that crime*

¶63.   Grayson argues that the trial court submitted Instruction S-3A to the jury, and it allowed the jury to find Grayson guilty of capital murder upon proof that he had committed only one element of the crime.  Grayson contends that trial/appellate counsel was ineffective in failing to object to this instruction.  Grayson contends that he was prejudiced because the jury was not properly instructed and it may have believed that Kilpatrick was the killer and still convicted Grayson of capital murder under the erroneous instruction.

¶64.   Instruction S-3A states:

> The Court instructs the Jury that each person present at the time and consenting to or encouraging the commission of a crime, and knowingly, wilfully and feloniously doing any act which is an element of the crime or immediately connected with it, or leading to its commission, is as much a principal as if he had with his own hands committed the whole offense; and if you believe from the evidence beyond a reasonable doubt, that the Defendant, BLAYDE N. GRAYSON, did wilfully, unlawfully, knowingly and feloniously do any act which is an element of the crime with which he is charged, namely Capital Murder, or immediately connected with it, or leading to its commission, then and in that event, you should find the Defendant, BLAYDE N. GRAYSON, Guilty of Capital Murder.

We have found similar instructions to be erroneous, though harmless.  *See Bishop v. State*, 812 So. 2d 934, 942-44 (Miss. 2002); *Milano v. State*, 790 So. 2d 179, 184-85 (Miss. 2001); *Liggins v. State*, 726 So. 2d 180, 184 (Miss. 1998); *Hornburger v. State*, 650 So. 2d 510, 515 (Miss. 1995).  In *Bishop*, a death-penalty case, we considered all of the jury instructions,

35

including "the other instructions which required the jury to find the State had to prove all elements of the offense before Bishop could be found guilty," and concluded that the error was harmless. *Bishop*, 812 So. 2d at 944.

¶65. In Instruction C-1(A), Grayson's jury was instructed that "[t]he State must prove each and every essential element of the crime charged beyond a reasonable doubt." Instruction S-4A stated the elements of capital murder. Instructions S-5A and D2A stated the elements of burglary. Instruction D-8 again stated that the State had the burden of proving the defendant guilty of every element of the crime charged. Grayson also requested and received an instruction on the lesser offense of accessory after the fact.

¶66. The opinion in *Hornburger* was entered by this Court in 1995. Therefore, trial/appellate counsel should have known that a similar instruction had been found to be erroneous. Even if trial/appellate counsel's failure to object to this instruction was deficient performance, Grayson has failed to show prejudice. As in *Bishop*, when we consider all the instructions taken as a whole, we find the error was harmless. Therefore, Grayson has failed to show that there is a reasonable probability that the result of the proceeding would have been different. *Chamberlin*, 55 So. 3d at 1050 (quoting *Mohr*, 584 So. 2d at 430).

¶67. Upon a thorough review of the direct-appeal record, the prior PCR proceedings, and the evidence offered by Grayson in support of his current post-conviction motion, Grayson has failed to show that his trial/appellate counsel rendered ineffective assistance of counsel. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674. Since this claim lacks merit,

36

Ryan's failure to raise this claim in the original PCR proceedings did not prejudice Grayson.

*Id.* This claim does not meet an exception to the procedural bars and should be dismissed.

9.  *Failure to adequately investigate and consult with Grayson prior to trial, which resulted in Grayson informing counsel that he did not desire to oppose a death sentence (if convicted) until the middle of the trial when Grayson's family and independent counsel were brought in to advise Grayson of his options*

10. *Failure to adequately present mitigation evidence at the sentencing phase in support of additional statutory and nonstatutory mitigating circumstances which prejudiced Grayson*

¶68.   Grayson's ninth and tenth claims of ineffective assistance of trial/appellate counsel will be considered together.   In his ninth claim, he sets out his argument that counsel's performance was deficient.   In his tenth claim, he sets out his argument that the deficient performance prejudiced him.

¶69.   In his first PCR proceedings, Grayson argued that his trial counsel was constitutionally ineffective in failing to investigate and present mitigation evidence. ***Grayson II***, 879 So. 2d at 1014-17.   We discussed at length the circumstances surrounding Grayson's initial decision not to oppose the death penalty and his later decision to allow the presentation of a very limited mitigation case. *Id.*   We concluded:

> The record in this matter is clear. Grayson was *thoroughly advised by his two defense counsel, the trial court, and by independent counsel, Mr. Shepard, of the consequences of his decision*. Grayson blocked his counsels' efforts and cannot now claim deficient performance. ***Dowthitt***, 230 F. 3d at 748; ***Clark***, 227 F. 3d at 284. *See also **Williams v. State***, 722 So. 2d 447, 450 (Miss. 1998).

*Id.* at 1016 (emphasis added).   We further rejected Grayson's argument "that counsel was ineffective in failing to perform an adequate investigation, pursuant to ***Wiggins v. Smith***, 539

37

U.S. 510, 123 S. Ct. 2527[, 156 L. Ed. 2d 471 (2003)]." ***Id.*** This argument has been considered and rejected and, therefore, his claims are bared by the doctrine of *res judicata*.[10]

¶70.   Procedural bar notwithstanding, Grayson now argues that counsel was constitutionally ineffective in their "failure to adequately investigate and consult with Grayson prior to trial which resulted in Grayson informing counsel that he did not desire to oppose a death sentence (if convicted) until the middle of the trial when Grayson's family and independent counsel were brought in to advise Grayson of his options." Grayson first asserts that counsel did not consult with him regarding the trial proceedings, regarding the nature of the sentencing proceeding, or the appeal process. Grayson claims that counsel did not have any meaningful discussions with him. Grayson alleges that, had counsel adequately advised him regarding his decision not to oppose the death penalty, "Grayson would have changed his mind much earlier."

¶71.   Grayson's allegations are contrary to the record. Both counsel's affidavit and Grayson's affidavit note that Grayson stated from the beginning that he did not want to oppose the death penalty. The record reveals Grayson's counsel discussed the matter at length with Grayson and explained the proceedings and his options to him. Counsel then requested that the court appoint another attorney to discuss the issue with Grayson, "so that it is clear that Mr. Bailey and I have not been derelict in our duties to our client and have made all of

---

[10]Grayson argues that this Court's factual findings were erroneous because Grayson's first PCR counsel failed adequately to present the facts to this Court. As will be discussed, our factual findings were based upon the trial transcript.

his options clear to him and make sure that he understands the implications and ramifications of what he plans to do tomorrow." The trial court then questioned Grayson regarding his decision, and Grayson ratified everything counsel had stated. The trial court also asked Grayson's family if they believed he understood the ramifications of his decision, and they said he did. After consulting with the third attorney, Grayson decided to allow his counsel to call only his mother and grandmother in mitigation and to make a closing argument. The trial court questioned Grayson twice more to make sure he agreed with what his attorney was stating and to make sure that he did not have any objection to what had been stated. As we held in *Grayson II*, "Grayson was thoroughly advised by his two defense counsel, the trial court, and by independent counsel, Mr. Shepard, of the consequences of his decision." *Id.* at 1016. Grayson's blanket statement in his latest PCR proceedings that he "would have changed his mind much earlier" is unconvincing.

¶72. Grayson next argues that counsel conducted virtually no investigation in preparation for sentencing, and this failure constituted ineffective assistance of counsel. Grayson asserts that counsel called only his mother and grandmother to testify in mitigation "simply because they had not investigated and had no other evidence to present." Grayson now alleges that he did not impede counsel's ability to talk with family members or other witnesses and that Grayson was cooperative with counsel. Grayson now contends that he "did not in any way limit counsel's ability to present mitigation in sentencing." He further asserts that he did not make a knowing and intelligent waiver of his right to present additional mitigation.

39

¶73.   Again, Grayson's allegations are contrary to the record.  After consulting with the third attorney, the court was informed regarding Grayson's decision to allow a *limited* mitigation case, and the following colloquy occurred:

BY THE COURT:  Mr. Ishee, anything you want to add?

BY MR. ISHEE:  Your Honor, the reason I'm going to opt today not to put on Mr. Grayson, he still has reservations about not fighting the death penalty.  The main reason, it's my understanding *he wishes to do, is to give his mother and grandmother an opportunity to speak on his behalf*, since they want to.  He has no objection to this.   He's also informed me that *I may make a closing argument*.  But I don't believe he personally can stand up and ask for life without parole.  And I think if I attempted to have him do so, then he would probably make very incriminating statements in front of the jury which would probably tend to cause them to impose the death penalty.  In fact, it's my belief he may even ask the jury for the death penalty if I put him on the witness stand.  I've informed him of all of this and he's informed me that he does not wish to testify.  But he will allow me to go forward with a defense.

BY THE COURT: Mr. Grayson, do you agree with what your attorney has said here?

BY THE DEFENDANT:  *Yes, ma'am*.

(Emphasis added.)  Again, as we found in **Grayson II**, "Grayson was thoroughly advised by his two defense counsel, the trial court, and by independent counsel, Mr. Shepard, of the consequences of his decision."  **Id.** at 1016.  Grayson's contention that his waiver was not knowing and intelligent is belied by the record.

¶74.   Even if additional mitigation evidence was discovered, pursuant to Grayson's instructions, it could not have been presented during the sentencing phase of the trial. "[C]ounsel is not ineffective for failing to present any evidence at the punishment phase, pursuant to his client's instructions."  **Id.** at 1016 (citing **Clark v. Johnson**, 227 F. 3d 273,

40

283-84 (5th Cir. 2000)). "Counsel will not be deemed ineffective for following their client's wishes, so long as the client made an informed decision." ***Dowthitt v. Johnson***, 230 F. 3d 733, 748 (5th Cir. 2000); *see also **Bishop v. State***, 882 So. 2d 135, 145 (Miss. 2004). "By no measure can . . . [the defendant] block his lawyer's efforts and later claim the resulting performance was constitutionally deficient." ***Grayson II***, 879 So. 2d at 1016 (quoting ***Dowthitt***, 230 F. 3d at 748).

¶75.   Grayson also argues that if counsel had investigated, they would have discovered substantial mitigation evidence from Grayson's family and others. Grayson offers numerous affidavits in support of his present PCR motion. These witnesses describe Grayson's childhood, family life, the abuse he suffered at the hands of his stepfather, and his drug abuse. Much of this evidence is cumulative of the testimony presented during the sentencing proceeding.

¶76.   Upon a thorough review of the direct-appeal record, the prior PCR proceedings, and the evidence offered by Grayson in support of his current post-conviction motion, Grayson has failed to show counsel's performance was deficient. Additionally, Grayson has failed to show that "there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.'" ***Chamberlin***, 55 So. 3d at 1050 (quoting ***Mohr***, 584 So. 2d at 430). Since this claim lacks merit, Ryan's performance did not prejudice Grayson. ***Strickland***,  466 U.S. at 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674. This claim does not meet an exception to the procedural bars and should be dismissed.

41

11.     *Failure to argue mitigation evidence to the jury and making only generic societal and religious arguments against the death penalty in sentencing*

¶77.    Grayson argues that trial counsel's failure to mention mitigation evidence in his closing argument was deficient performance which prejudiced him. The record reveals that counsel discussed numerous reasons for the jury to impose a life sentence instead of the death penalty. The record reveals that, throughout the guilt-innocence phase of the trial, "Grayson instructed his counsel not to oppose the death penalty in the event of a guilty verdict." *Grayson II*, 879 So. 2d at 1014. In Grayson's affidavit in support of his present PCR motion, he admits that he told his attorney "from the beginning that I did not want to oppose the death penalty if convicted. . . ." The record reveals that, in his closing argument, counsel made an impassioned plea for a sentence of life without parole. The jury was properly instructed to consider mitigation evidence.

¶78.    The State argues that, given Grayson's limitations on the presentation of mitigation evidence, counsel had but one choice for his closing argument– to argue for life without parole. The State contends that counsel's closing argument represents sound trial strategy. The State correctly notes that "this Court has been consistent in finding that closing argument falls under the ambit of defense counsel's trial strategy." *Havard v. State*, 928 So. 2d 771, 796 (Miss. 2006) (citing *Pruitt v. State*, 807 So. 2d 1236, 1240 (Miss. 2002)).

¶79.    We have consistently held that "Defense counsel is presumed competent." *Davis*, 897 So. 2d at 965 (citing *Washington*, 620 So. 2d 966). "Perfect representation in hindsight is not the standard, and the accused is not entitled to errorless counsel." *Id*. at 966 (citing *Stringer*,

42

454 So. 2d at 476). "The Sixth Amendment guarantees reasonable competence, *not perfect advocacy judged with the benefit of hindsight.*" *Id*. at 966-67 (emphasis added) (internal citations omitted).

¶80.    Upon a thorough review of the direct-appeal record, the prior PCR proceedings, and the evidence offered by Grayson in support of his current post-conviction motion, Grayson has failed to show that there is a reasonable probability that the result of the proceedings would have been different. *Chamberlin*, 55 So. 3d at 1050 (quoting *Mohr*, 584 So. 2d at 430).    Therefore, Grayson has failed to show that his trial/appellate counsel rendered ineffective assistance of counsel. *Strickland*,  466 U.S. at 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674.  Since this claim lacks merit, Ryan's failure to raise this claim in the original PCR proceedings did not prejudice Grayson.  *Id.*  This claim does not meet an exception to the procedural bars and should be dismissed.

> 12.    *Failure to object to the trial court's failure to instruct the jury that it should consider all mitigation presented, rather than just the statutory mitigating circumstances*

¶81.    Grayson argues that his trial counsel rendered constitutionally ineffective assistance of counsel when they failed adequately to instruct the jury regarding the consideration of all mitigation evidence.    As discussed above, "we cannot conclude that the jury was unconstitutionally foreclosed from considering all mitigating circumstances." *Berry*, 703 So. 2d at 287.  Since this claim is without merit, Grayson cannot sustain the required showing of deficient performance or prejudice to establish a claim of ineffective assistance of trial/appellate counsel.  *Walker*, 863 So. 2d at 17.

43

¶82.   Since this claim lacks merit, Ryan's failure to raise this claim in the original PCR proceedings did not prejudice Grayson. ***Strickland***, 466 U.S. at 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674.   This claim does not meet an exception to the procedural bars and should be dismissed.

> 13.    *Failure to object to the trial court's failure adequately to instruct the jury that a life sentence would be a sentence served without parole eligibility*

¶83.   Grayson argues that his trial counsel rendered constitutionally ineffective assistance of counsel when they failed adequately to instruct the jury that a life sentence would be served without parole eligibility.   As discussed above, we find that the jury was adequately informed that a life sentence would be without parole.   Since this claim is without merit, Grayson cannot sustain the required showing of deficient performance or prejudice to establish a claim of ineffective assistance of trial/appellate counsel. ***Walker***, 863 So. 2d at 17.

¶84.   Since this claim lacks merit, Ryan's failure to raise this claim in the original PCR proceedings did not prejudice Grayson. ***Strickland***, 466 U.S. at 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674.   This claim does not meet an exception to the procedural bars and should be dismissed.

> 14.    *Cumulative prejudice*

¶85.   Grayson argues that counsel's deficient conduct individually and collectively prejudiced Grayson.   He contends that the cumulative effect of these errors requires that he be granted relief.   "In order for there to be a cumulative effect of errors, there must first be errors." ***Loden v. State***, 43 So. 3d 365, 394 (Miss. 2010) (quoting ***Walker***, 863 So. 2d at 23).

Grayson has failed to prove that he is entitled to any relief on each of his claims individually; we likewise conclude that Grayson has failed to prove that he is entitled to any relief on such claims cumulatively.

*Motion for Access*

¶86. Grayson seeks access to his experts for the purpose of evaluation, testing, and any other purpose reasonably believed by counsel as necessary for the full litigation of his post-conviction claims. Grayson states that this motion is not a request for funds for expert assistance. Grayson states that the State Penitentiary at Parchman, Mississippi, where all prisoners sentenced to death are housed, will not allow any defense expert to visit such a prisoner without an order allowing the visit from a court with jurisdiction. When the prisoner seeks such an order, the Mississippi Attorney General's death-penalty division opposes it.

¶87. Grayson argues that, without access to his experts, he unfairly will be denied the opportunity to develop the evidence required to meet his burden of proof in his post-conviction proceedings, and his rights to due process will be violated. Grayson also argues that the continued denial of access to his experts hinders his attempts to raise claims in his federal *habeas corpus* proceedings, which constitutes the denial of access to courts.

¶88. Pursuant to the PCR Act, any motion seeking post-conviction collateral relief must contain "[a] concise statement of the claims or grounds upon which the motion is based," and must contain

> (d) A separate statement of the specific facts which are within the personal knowledge of the petitioner and which shall be sworn to by the petitioner . . . .

45

(e) A specific statement of the facts which are not within the petitioner's personal knowledge. *The motion shall state how or by whom said facts will be proven. Affidavits of the witnesses who will testify and copies of documents or records that will be offered shall be attached to the motion.* The affidavits of other persons and the copies of documents and records may be excused upon a showing, which shall be specifically detailed in the motion, of good cause why they cannot be obtained. This showing shall state what the petitioner has done to attempt to obtain the affidavits, records and documents, the production of which he requests the court to excuse.

Miss. Code Ann. § 99-39-9 (Supp. 2012) (emphasis added). If a petitioner fails to support his motion adequately with evidence, the motion may be summarily dismissed. Miss. Code Ann. §§ 99-39-11, 99-39-27 (Supp. 2012).[11] Any later attempts adequately to support a claim which previously has been summarily dismissed may be procedurally barred. *See, e.g.,* Miss. Code Ann. § 99-39-27(9) (Supp. 2012). Therefore, it is of the utmost importance that a prisoner adequately support the claims raised in his PCR motion with evidence.

¶89. While the PCR Act does contain a provision allowing discovery, in order to be permitted limited discovery, the petitioner's PCR motion already must have survived summary dismissal. Miss. Code Ann. § 99-39-15 (Rev. 2007). In death-penalty cases, Rule 22(c)(4)(ii) of the Mississippi Rules of Appellate Procedure states:

---

[11]Section 99-39-9(4) of the Mississippi Code states: "If the motion received by the clerk does not substantially comply with the requirements of this section, it shall be returned to the petitioner if a judge of the court so directs, together with a statement of the reason for its return. The clerk shall retain a copy of the motion so returned." Miss. Code Ann. § 99-39-9(a) (Supp. 2012). Rule 22(a) of the Mississippi Rules of Appellate Procedure states, in pertinent part: "If any application fails to comply substantially with the statute, the clerk of the Supreme Court shall give written notice of the default, appraising the party of the nature of the deficiency. If the deficiencies are not corrected within thirty days, the application may be dismissed." M.R.A.P 22(a). This dismissal would be without prejudice.

Upon appointment of counsel, or the determination that the petitioner is represented by private counsel the petitioner's prior trial and appellate counsel shall make available to the petitioner's post-conviction counsel their complete files relating to the conviction and sentence. The State, to the extent allowed by law, shall make available to post-conviction counsel the complete files of all law enforcement and prosecutorial agencies involved in the investigation of the crimes committed and the prosecution of the petitioner. If the State has a reasonable belief that allowing inspection of any portion of the files by post-conviction counsel for the petitioner would not be in the interest of justice, the State may submit for inspection by the convicting court those portions of the files so identified. If upon examination of the files, the court finds that such portions of the files could not assist the capital petitioner in investigating, preparing, or presenting a motion for post-conviction relief, the court in its discretion may allow the State to withhold that portion of the files. Discovery and compulsory process may be allowed the petitioner from and after the appointment of post-conviction counsel or the determination that the petitioner is represented by private counselor or is proceeding pro se, but only upon motion indicating the purpose of such discovery and that such discovery is not frivolous and is likely to be helpful in the investigation, preparation or presentation of specific issues which the petitioner in good faith believes to be in question and proper for post-conviction relief, and order entered in the sound discretion of the court. Upon determination that the petitioner has elected to proceed pro se, such files and discovery shall be made available as provided in subsection (2)(iii) above.

M.R.A.P. 22(c)(4)(ii).

¶90.    We have held that PCR proceedings in death-penalty cases are a critical stage of the death-penalty appeal process at the state level. *Jackson*, 732 So. 2d at 191. The denial of an opportunity to present a properly supported motion seeking post-conviction collateral relief is, in effect, the denial of meaningful access to the courts. *Id.* at 190; *see also Russell*, 819 So. 2d at 1177-1180.

¶91.    The State responds to Grayson's "Motion for Access" by arguing that Grayson is not entitled to the effective assistance of counsel in PCR proceedings. The State's argument has

47

been rejected as discussed above. The State makes no other argument in opposition to the motion for access. Instead, the State responds: "[i]n the event the Court grants the motion, the respondent respectfully requests that the petitioner be required to comply with the Mississippi Department of Corrections rules and regulations concerning expert evaluations. Such compliance would include, but is not limited to, sufficient notice and scheduling during normal business hours."

¶92. Recently, we addressed this issue in *Moffett v. State*, 2011-DR-00028-SCT (August 31, 2012, order). The order states, in pertinent part:

> As a matter of due process, Moffett should be allowed access to his experts subject to the rules and regulations of the MDOC. Because MDOC's rules and regulations presently require a court order, MDOC should be noticed with the request for access and afforded an opportunity to show cause why its present policies do not violate petitioner's due process rights.

*Id. See also Simmons v. State*, 2012-DR-00801-SCT (June 5, 2012, order). We stayed Moffett's pending post-conviction collateral relief proceedings "until such time as MDOC is heard in the proceedings regarding petitioner's due process claims. . . ." *Id.* In response to the order, Moffett and the State entered into an "Agreed Order Allowing Access." Therefore, the Mississippi Department of Corrections submitted no argument regarding whether its present policies violate petitioners' due-process rights.

¶93. Prisoners sentenced to death should be granted access to their experts so long as the access complies with the rules and regulations of the Mississippi Department of Corrections and so long as those rules and regulations do not violate petitioners' due-process rights. Grayson is hereby granted leave to proceed in the circuit court with a motion for access.

48

## CONCLUSION

¶94. PCR petitioners who have been sentenced to death do have a right to the effective assistance of PCR counsel. Grayson's counsel in his first PCR proceedings before this Court rendered deficient performance. However, Grayson has failed to show that this deficient performance prejudiced him. Therefore, Grayson's claim that he received ineffective assistance of PCR counsel is without merit. Grayson has failed to show that his claims meet any exceptions to the procedural bars, and his "Motion for Leave to File Successor Petition for Post-Conviction Relief" is hereby dismissed as procedurally barred.

¶95. Grayson is hereby granted leave to proceed in the circuit court with a motion for access. As a matter of due process, Grayson should be allowed access to his experts, subject to the rules and regulations of the Mississippi Department of Corrections (MDOC). Because MDOC's rules and regulations presently require a court order, MDOC should be noticed with the request for access and afforded an opportunity to show cause why its present policies do not violate petitioner's due-process rights.

¶96. **MOTION FOR LEAVE TO FILE SUCCESSOR PETITION FOR POST-CONVICTION RELIEF IS DISMISSED AS PROCEDURALLY BARRED. LEAVE TO PROCEED IN THE CIRCUIT COURT WITH A MOTION FOR ACCESS IS GRANTED.**

**WALLER, C.J., RANDOLPH, P.J., KITCHENS, CHANDLER, PIERCE, KING AND COLEMAN, JJ., CONCUR. DICKINSON, P.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**