*563
ORDER

JAMES W. KITCHENS, Justice.
This matter is before the Court, en banc, on Alan Dale Walker’s Motion for Leave to File Successive Petition for Post-Conviction Relief, whereby he seeks to file a petition for post-conviction relief in the trial court. Alan Dale Walker was convicted in August 1991 of the capital murder of Konya Rebecca Edwards. His trial was conducted in Warren County on change of venue from the First Judicial District of Harrison County. Walker also was convicted in the same trial of the rape and kidnapping of Edwards. Walker’s conviction and death sentence were affirmed by this Court in Walker v. State, 671 So.2d 581 (Miss.1995) (Walker I), cert. denied, Walker v. Mississippi, 519 U.S. 1011, 117 S.Ct. 518, 136 L.Ed.2d 406 (1996).
Walker contends that his post-conviction (PCR) counsel in 2003, Robert Ryan of the Mississippi Office of Capital Post-Conviction Counsel, was ineffective. This Court recently held that convicts under a sentence of death have a right to the effective assistance of post-conviction counsel. Grayson v. State, 118 So.3d 118, 147 (Miss.2013). Prior to that decision, Walker would have been barred procedurally from claiming that his PCR counsel was ineffective. Accordingly, if he now is able to show (1) deficient conduct of counsel and (2) prejudice that resulted to him on account of ineffective PCR counsel,[1] then he should be granted leave to proceed in the trial court on that issue.
Walker avers that his trial counsel was ineffective because he failed to conduct research into Walker’s background in an effort to identify mitigation evidence for presentation at the penalty phase of his 1991 trial. He has attached extensive affidavits and other evidence demonstrating the type of proof that effective trial counsel would have found and presented at the *564 mitigation phase. Walker claims that the outcome of his sentencing hearing would have been different if his trial counsel had effectively presented the mitigation evidence that was then available. He further claims that Robert Ryan was ineffective at the PCR stage for failing to make a claim that his trial counsel was ineffective in the mitigation phase of his trial.
We find that the mitigation evidence Walker has presented in his petition shows that he potentially was prejudiced by trial counsel’s deficient performance at the penalty stage. We further find that Walker’s prior PCR counsel was ineffective for his failure to raise that issue in his initial petition for post-conviction relief, and that Walker was prejudiced by that deficient performance if his trial counsel was, in fact, ineffective. Walker has shown (1) deficient conduct and (2) prejudice that resulted from ineffective assistance of PCR counsel sufficient to warrant a hearing on this issue. Walker’s claim of ineffective assistance of post-conviction counsel is sufficient to overcome the procedural bars and allow this Court to reach the merits of his claim.
IT IS THEREFORE ORDERED that Alan Dale Walker’s Motion for Leave to File Successive Petition for Post-Conviction Relief should be, and it is hereby, granted.
IT IS FURTHER ORDERED that the Circuit Court of the First Judicial District of Harrison County shall conduct a hearing to determine whether Alan Dale Walker’s trial counsel was ineffective in searching for and presenting mitigation evidence during the penalty phase of his trial, and whether Walker suffered prejudice from such deficient performance, if any, “sufficient to undermine the confidence in the outcome actually reached at sentencing.” Doss v. State, 19 So.3d 690, 708 (Miss.2009) (quoting Rompilla v. Beard, 545 U.S. 374, 393, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005) (internal quotation omitted)).
IT IS FURTHER ORDERED that if the circuit court finds that Alan Dale Walker was prejudiced by trial counsel’s deficient performance at the penalty phase, then it shall vacate Walker’s sentence of death and conduct a new sentencing hearing.
SO ORDERED.
TO GRANT: DICKINSON, P.J., KITCHENS, CHANDLER, KING AND COLEMAN, JJ. WALLER, C.J., OBJECTS TO THE ORDER WITH SEPARATE WRITTEN STATEMENT JOINED BY RANDOLPH, P.J., LAMAR AND PIERCE, JJ.
WALLER, Chief Justice,
objecting to the order with separate written statement:
¶ 1. In this successive petition for post-conviction relief, Walker asserts that his trial counsel was ineffective for failing to produce adequate mitigation evidence during the penalty phase of his trial. Walker then claims that his prior post-conviction counsel was ineffective for failing to raise this issue in his first petition for post-conviction relief.[2] Having reviewed the materials presented in support of Walker’s petition, I would deny Walker’s petition, as he failed to show that he was prejudiced by his post-conviction counsel’s failure to raise this issue in his first petition for post-conviction relief.
*565 ¶ 2. This Court recently recognized the right to effective post-conviction counsel. See Grayson v. State, 118 So.3d 118, 147 (Miss.2013). To make a claim of ineffective assistance of post-conviction counsel, Walker must first prove that his post-conviction counsel’s performance was deficient, meaning that “counsel made errors so serious that [he or she] was not functioning as the ‘counsel’ guaranteed the defendant by the Sixth Amendment.” Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Second, Walker must prove that such deficient performance resulted in prejudice to his defense, meaning that the “counsel’s errors were so serious as to deprive the defendant of a fair trial, a trial whose result is rehable.” Id. Absent both showings, Walker’s claim cannot prevail. Id.
¶ 3. During the penalty phase of Walker’s trial, Walker offered four mitigation witnesses — Mike Maniscalco, Walker’s former employer; Leon Frederick, Walker’s half-brother; Amanda Frederick, Walker’s half-sister; and Anita Frederick, Walker’s mother. The witnesses testified as follows:
Mike Maniscalco: Maniscalco was a foreman for Tilley Constructors Construction Firm. At the time of the murder, Walker had worked for Maniscalco for about eight months as a general laborer on an apartment renovation project. Maniscalco described Walker as a good and dependable employee who was liked by his coworkers. On cross-examination, Maniscalco stated that he would not hire Walker after learning of his convictions.
Leon Frederick: Leon was eighteen years old at the time of the trial and a senior in high school. Walker and his infant daughter Michele lived with Leon, Anita, and Amanda prior to the murder. Leon testified that Walker would take care of him, Amanda, and Michele when Leon’s mother was at work. Leon thought that Walker should receive a life sentence because he had his daughter to worry about, and because Walker’s code-fendant Jason Riser received a life sentence.[3]
Amanda Frederick: Amanda was in the sixth grade at the time of the trial. She testified that Walker had lived with her for most of her life and never treated her bad. Like Leon, she believed that Walker should receive a life sentence because he had a young daughter. Amanda indicated that Walker had sent his income tax refund for the previous year to his mother and told her to buy something special for his daughter.
Anita Frederick: Anita testified that Walker was born in Pensacola, Florida, when she was about sixteen years old. Alan’s brother Terry was born two years later in South Carolina. Anita and Walker’s father Ronald divorced when Walker was four years old. Anita then moved to the Mississippi Gulf Coast and worked during the evenings at a restaurant. The children stayed in a nursery while Anita was working. Two years later, Anita married Winfred Lamar Frederick, Sr., Leon’s father.
When Walker was in the fourth grade, Ronald contacted Anita and asked if Walker and Terry could come live with him in Alaska. Anita obliged, and Walker and Terry moved to Alaska with their father for about a year before returning to Mississippi. When Walker was about sixteen, he and Terry returned to Alaska. Walker stayed about a year and *566 returned to Mississippi, but Terry stayed with his father.
Walker lived with Anita, Leon, and Amanda when he returned from Alaska. Walker dropped out of school in the eleventh grade and lived on-and-off with Anita or with friends. Walker helped watch Leon and Amanda while Anita was working and paid rent when he lived with her.
Walker and his then-girlfriend Robin Marroy had a baby, Michele, in March, 1990. Robin and Walker broke up in August 1990, and Robin left the baby with Anita in October, 1990. Robin has never contributed financially for the care of the child. Anita brought a picture of Michele to trial, and it was admitted into evidence. Anita testified that Walker has always loved and provided for Michele.
Anita testified that Walker and a friend had once received a certificate of appreciation for rescuing a child from a burning house. Walker’s certificate was admitted into evidence.
Finally, Anita testified that she believed that if Walker was actually guilty, then he and Jason Riser should have received the same sentence.
Walker also gave a statement at the sentencing hearing, in which he apologized to the victim’s family, the Riser family, and his family. In sum, the mitigation evidence presented at trial showed that Walker had a supportive family, that he had a young daughter whom he loved, and that he generally cared for others.
¶ 4. Walker now presents this Court with thirty-three exhibits, materials which he claims effective trial counsel would have discovered prior to trial upon adequate investigation. Walker asserts that his pri- or post-conviction counsel Robert M. Ryan was ineffective in failing to discover this information, which would have shown that his trial counsel Earl Stegall performed an insufficient investigation into Walker’s background.
¶ 5. The bulk of the material presented in support of Walker’s petition concerns Stegall’s and Ryan’s alleged deficient representation of Walker. Walker has produced the affidavits of five family members and two family friends,[4] along with his own affidavit. Anita and Amanda Frederick, both of whom testified at trial, stated that Stegall did not meet -with them prior to trial to go over their mitigation testimony. The other affiants indicated that no one ever contacted them to learn about Walker’s background. Stegall affirmed that he did not meet with any of Walker’s friends or relatives prior to trial. Stegall believed that Walker had a very strong defense until he found out two days before trial that Riser would testify for the State, which completely changed his view of the case. Stegall did not specifically identify what steps he took to prepare for the penalty phase of the trial, though he did recall speaking with Walker’s immediate family prior to trial. He also indicated that he did not consult with an expert witness in preparation for the penalty phase, but he did not state why an expert would have been necessary or beneficial.
¶ 6. Walker also has submitted the affidavits of the attorneys, paralegals, and investigators from the Mississippi Office of Capital Post-Conviction Counsel who worked on his prior post-conviction-relief *567 petition.[5] It is unclear whether these affidavits were prepared specifically for this case, though. These affidavits were produced in July 2005, six years prior to the other affidavits presented in this case and seem to be directed generally to all of the capital post-conviction cases pending around the same time as Walker’s case. These affidavits generally describe the af-fiants’ opinions that, during the time of Walker’s first post-conviction-relief petition, the Office of Capital Post-Conviction Counsel was overworked, understaffed, and underfunded to the point that it could not adequately handle the cases assigned to it. In his affidavit, Robert Ryan indicated that, at one point, he was the only attorney working for the Office and was working on twenty-seven capital post-conviction cases simultaneously. In his own affidavit, Walker expressed his disapproval of Ryan’s handling of his first petition, claiming that neither Ryan nor anyone from his staff had met with or contacted him prior to filing the petition. Anita and Amanda also indicated that after Walker’s trial, no one contacted them to discuss the case until 2007 or 2008.
¶ 7. The rest of the information presented by Walker’s friends and relatives is meant to illustrate the prejudice caused by Walker’s prior counsel’s alleged deficient performance. The affidavits of Walker’s family members expand on the information provided at trial concerning Walker’s family background. Some of this information, such as the detailed recounting of Anita’s childhood, is not directly related to Walker and therefore is of questionable relevance. In addition, I believe that the information that does directly pertain to Walker is either of questionable mitigating value or could have been reasonably inferred from the evidence actually presented at trial and therefore likely would not have been presented during Walker’s trial.
¶ 8. The affidavits of Walker’s relatives indicate that Walker grew up in an extremely poor household and lacked a positive male role model in his life. Dr. Matthew Mendel, a clinical psychologist who interviewed Walker and his family, provides the most telling account of the impact Walker’s environment had on his personality. The neighborhood Walker grew up in was mired in poverty, crime, and manipulation. Because he grew up without a father figure, Walker sought out the attention of “unsavory, aggressive, and criminal characters” in his neighborhood. An older man in the neighborhood enlisted Walker and his friends to steal things for him, which he would later fence. These interactions allowed Walker and his friends access to alcohol and marijuana at a very young age. In fact, two of Walker’s close friends died of illnesses related to alcoholism, and another was permanently incapacitated due to a drunk-driving accident. Dr. Mendel also indicated that Walker was introduced to sex at an extremely young age by girls who were considerably older than him, giving him an unnatural view of women. Dr. Mendel opined that Walker’s aggression, rage, and control issues with women, though founded in his childhood, were best demonstrated by his adult relationships with women. During interviews with Dr. Mendel, two of Walker’s ex-girlfriends described Walker as abusive and controlling. This abuse occurred primarily when Walker was under the influence of alcohol, which Dr. *568 Mendel opined played a critical role in “letting loose Alan’s simmering rage.” Dr. Mendel did believe that Walker expressed positive character traits, citing essentially the same evidence presented at Walker’s trial — that he cared for his younger siblings and attempted to provide for his daughter even from prison.
¶ 9. Prior to our holding in Grayson, Walker filed a petition for writ of habeas corpus with the United States District Court for the Southern District of Mississippi, asserting essentially the same argument he has submitted in support of this petition. See Walker v. Epps, Civil Action No. 1:97CV29KS, 2012 WL 1033467 (S.D.Miss. Mar. 27, 2012). The District Court found Walker’s claim to be procedurally barred from habeas review because the issue had not yet been raised in state court. Id. at *54. But the court then noted that, even if Walker’s claim was properly before the court, it could not say that Walker’s trial counsel was ineffective for failing adequately to investigate the case, because Walker could not show the element of prejudice required by Strickland. Id. at *62.
¶ 10. I agree with the District Court that Walker cannot prove the second prong of Strickland, and I do not believe our holding in Grayson requires us to hold differently. The affidavits and other materials presented with Walker’s petition arguably may support Walker’s position that his trial and prior post-conviction attorneys performed deficiently when investigating his background. However, I cannot say that Walker was prejudiced in any way by counsel’s failure to present this information at trial. The information pertaining to the instability of Walker’s neighborhood likely was gleaned by the jury from the testimony at trial. There also are clear strategic reasons this information would not have been presented at all, even if it had been discovered by Walker’s counsel. If evidence of Walker’s history of criminal activity, alcohol and drug abuse, and abuse of women had been presented at the penalty phase of Walker’s trial, the prosecutor would have been free to use this evidence to argue that Walker was beyond rehabilitation and posed a future threat in the prison population. See Bell v. State, 725 So.2d 836, 862 (Miss.1998) (argument regarding propensity for future dangerousness is permissible if such argument is not an appeal to bias or passions, but rather a reasonable inference and comment on the evidence).
¶ 11. The information submitted in support of Walker’s petition is either cumulative or likely would have been harmful to his defense in light of the gruesome nature of the crime. Thus, I cannot say that Walker has shown “a reasonable probability that ... the result of the proceedings would have been different” but for his counsel’s alleged deficient performance. Mohr v. State, 584 So.2d 426, 430 (Miss.1991). Because Walker failed to make a showing of the threshold evidence necessary to prove both prongs of Strickland, I would dismiss Walker’s petition.
¶ 12. Accordingly, I object to the Order granting Walker leave to file a successive petition for post-conviction relief.
RANDOLPH, P. J., LAMAR AND PIERCE, JJ., JOIN THIS SEPARATE WRITTEN STATEMENT.

. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

. Walker’s prior post-conviction counsel did raise the issue of ineffective assistance of trial counsel in the first petition for post-conviction relief, asserting nine separate grounds for relief, one of which contained five separate sub-issues. See Walker v. State, 863 So.2d 1 (Miss.2003). Trial counsel’s alleged failure to produce adequate mitigating evidence was not one of the issues raised.

. Jason Riser pleaded guilty to murder two days before Walker’s trial and received a life sentence. In return, Riser testified against Walker at Walker's trial.

. These affiants are: Anita Frederick, Walker's mother; Ronald Walker, Walker's father; Terry Walker, Walker’s brother; Amanda Frederick, Walker’s half-sister; Nellie Richards, Anita’s sister; Faye Breland, one of Anita’s coworkers; and Paula Shavers, one of Anita's neighbors who went to school with Walker.

. These affiants are: Robert M. Ryan, Walker’s prior post-conviction counsel and former Director of the Mississippi Office of Capital Post-Conviction Counsel; C. Jackson Williams, who served as director prior to Ryan; David P. Voisin, a former office attorney; Terri L. Marroquin, a former office attorney; Stacy Ferraro, a former office paralegal who is now an attorney; and Tomika Harris, an office investigator.