# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2018-CA-01059-SCT

*ALAN DALE WALKER*

*v.*

*STATE OF MISSISSIPPI*


| | |
|---|---|
| DATE OF JUDGMENT: | 04/17/2018 |
| TRIAL JUDGE: | HON. CHRISTOPHER LOUIS SCHMIDT |
| TRIAL COURT ATTORNEYS: | MARVIN LUTHER WHITE, JR. |
| | DAVID P. VOISIN |
| | JAMES W. CRAIG |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JAMES W. CRAIG |
| | DAVID P. VOISIN |
| | HANNAH LOMMERS-JOHNSON |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: LADONNA C. HOLLAND |
| | MARVIN L. WHITE, JR. |
| | BRAD A. SMITH |
| NATURE OF THE CASE: | CIVIL - POST-CONVICTION RELIEF |
| DISPOSITION: | AFFIRMED - 06/25/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**COLEMAN, JUSTICE, FOR THE COURT:**

¶1.     Alan Dale Walker was convicted of the capital murder of Konya Edwards during the

commission of sexual battery, and he was sentenced to death. *Walker v. State*, 671 So. 2d

581, 587 (Miss. 1995).  He also was convicted of forcible rape and kidnapping for which he

was sentenced to thirty and thirty-five years, to run consecutively.  *Id.*  On direct appeal, the

Court affirmed his convictions and sentences.  *Id.* at 588.  We denied Walker's application

for leave to file a motion for post-conviction relief. ***Walker v. State***, 863 So. 2d 1, 31 (¶ 92) (Miss. 2003). Walker filed a successive motion, and the Court held that his post-conviction counsel had rendered ineffective assistance of counsel. We remanded the case to the trial court for a hearing to determine whether Walker's trial counsel had been ineffective under the standard set forth in ***Strickland v. Washington***, 466 U.S. 668, 687-88 (1984), in searching for and presenting mitigating evidence during the penalty phase of the trial and whether such deficient performance, if any, had prejudiced Walker.

¶2. After a hearing on remand, the Circuit Court of the First Judicial District of Harrison County held that Walker had failed to meet his burden of proof that trial counsel had rendered deficient performance that prejudiced him. Walker appeals. Following a review of the record, we discern no grounds for reversing the trial judge's determination. Accordingly, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶3. On December 10, 2013, we granted Walker's motion for leave to file a successive motion for post-conviction relief and ordered the circuit court to conduct a hearing on the following issue:

> whether Alan Dale Walker's trial counsel was ineffective in searching for and presenting mitigation evidence during the penalty phase of his trial, and whether Walker suffered prejudice from such deficient performance, if any, "sufficient to undermine the confidence in the outcome actually reached at sentencing." ***Doss v. State***, 19 So. 3d 690, 708 (Miss. 2009) (quoting ***Rompilla v. Beard***, 545 U.S. 374, 393, 125 S. Ct. 2456, 162 L. Ed. 2d 360 (2005) (internal quotation [mark] omitted)).

***Walker v. State***, 131 So. 3d 562, 564 (Miss. 2013).

2

¶4.     On April 29, 2014, Walker filed a motion to vacate sentence in the circuit court. After the conclusion of pretrial matters and additional psychological testing, the circuit court held an evidentiary hearing. On February 22, 2016, the circuit court heard lay-witness testimony from Walker's family members and from his mother's friend. On December 1, 2016, the circuit court heard testimony from Walker's trial counsel, Earl Stegall, and from his experts, psychologist Matthew Mendel, Ph.D., and neuropsychologist Robert Shaffer, Ph.D.

*Evidentiary Hearing Testimony*

### Earl Stegall

¶5.     Earl Stegall represented Walker in his capital-murder trial with Robin Midcalf, a relatively new lawyer, as cocounsel. Stegall testified that he had memory problems after suffering a stroke in 2005 and that he had reviewed the case and refreshed his memory but that he was unable to recall everything. Throughout his testimony, Stegall exhibited a significant inability to recall past events.

¶6.     Stegall related what he could remember of his representation of Walker. He was proud that he successfully had moved to suppress Walker's confession. He testified that until the confession had been suppressed, he had thought the guilt phase was a "foregone conclusion," but that afterwards he thought "he had a shot." Stegall testified that he had believed that Jonathan Riser, Walker's accomplice, was not going to testify due to his pending charges. Stegall said his defense strategy was going to be that Riser had committed the acts and that Walker happened to be present during the crime. Stegall had thought "for sure" that after the confession was suppressed, the State would offer Walker a plea deal and,

at worst, Walker would face a life sentence. Because Stegall had thought he "had a lock on the life sentence," he was not "as worried about the penalty phase at all." "[A]t the last second," however, Riser made a deal with the State to testify against Walker, after which Stegall requested a continuance. The trial court denied his request.

¶7.    Stegall testified as follows about his penalty-phase strategy:

> I remember I was going to have him address the jury rather than have him testify. I think that's exactly what I did. And I wanted to—my thing in death penalty cases was to personalize them. Make them a person, you know. And tell their life history as well as you could so the jury could look at them and think of them as a person and not just somebody sitting there charged as a murderer. And I remember, I don't have an independent recollection of this, but I know I must have done it. We had the mother come and testify, that was the plan, and then a sister or a brother was going to testify.

Stegall testified that he could not remember having done so but that he would have spoken with the penalty-phase witnesses before trial by phone or before they took the stand. He could not recall having spoken with Walker's father or other non-local relatives or whether he had moved for funds for an investigator for the mitigation case. He thought he would have asked Midcalf to investigate. He did not remember having consulted any experts.

¶8.    Stegall did remember that he had asked for a mental evaluation to assess Walker's competency to stand trial, but he said that nothing about Walker had given him cause to think to hire a psychologist. He was shown a July 26, 1991 order granting the defense's motion for a mental evaluation, but Stegall was unable to recall speaking with the psychiatrist who had performed the mental evaluation, Dr. Maggio, before the trial. When asked if he would have wanted the State to obtain a report that showed criminal behavior, he said he would not have wanted the State to hear of any violent or serious crime and use it against his client.

4

*Discovery of Pretrial Psychiatric Evaluation*

¶9. After the hearing concluded, the circuit court reviewed the original trial exhibits and found a report of the pretrial psychiatric evaluation by Dr. Maggio that had been requested by defense counsel and was believed to have gone missing after the trial. The report was found under seal in the circuit clerk's files.

¶10. The trial court notified the parties and allowed Walker's counsel to view the sealed report. Walker requested that the court either not consider the report or reopen the evidentiary hearing to take additional testimony from Stegall. The circuit court denied his requests, finding that the report was relevant and that Stegall likely would have nothing helpful to add to his original testimony. The circuit court asked the parties to resubmit their post-hearing briefs, including arguments addressing the report.

*Circuit Court's Ruling*

¶11. The circuit court entered an order and a corrected order denying Walker's motion to vacate sentence. Under the first prong of the ***Strickland*** test, deficient performance, the circuit court found that Stegall's strategy of seeking to humanize Walker before the jury had been reasonable. The court found that although PCR counsel would have used a different mitigation strategy, Stegall's approach was not constitutionally deficient, that Walker likewise had failed to meet his burden of proving ***Strickland*** prejudice, and that given the brutality of the crime, no reasonable probability existed that the alleged childhood trauma and impaired brain function would have caused a jury to impose a life sentence instead of the death penalty.

¶12.    Walker filed a motion to alter or amend or for reconsideration. In furtherance of his argument that Stegall's performance had been deficient, he attached the affidavits of criminal-defense attorneys Thomas Fortner and Ross Parker Simons, who opined that Stegall's penalty-phase preparation had breached the prevailing professional standards for capital-defense attorneys. We agree with the State that because the affidavits were not admitted at the evidentiary hearing, they cannot be considered. *Fowler v. White*, 85 So. 3d 287, 292 (¶ 20) (Miss. 2012). Therefore, we do not address Walker's many arguments that rely on the affidavits.

## STANDARD OF REVIEW

¶13.    "When reviewing a lower court's decision to deny a petition for post conviction relief, this Court will not disturb the trial court's factual findings unless they are found to be clearly erroneous." *Manning v. State*, 158 So. 3d 302, 304 (¶ 4) (Miss. 2015) (internal quotation marks omitted) (quoting *Doss v. State*, 19 So. 3d 690, 694 (¶ 5) (Miss. 2009)).

> In making that determination, "[t]his Court must examine the entire record and accept 'that evidence which supports or reasonably tends to support the findings of fact made below, together with all reasonable inferences which may be drawn therefrom and which favor the lower court's findings of fact . . . .'" *Mullins v. Ratcliff*, 515 So. 2d 1183, 1189 (Miss. 1987) (quoting *Cotton v. McConnell*, 435 So. 2d 683, 685 (Miss. 1983)). That includes deference to the circuit judge as the "sole authority for determining credibility of the witnesses." *Mullins*, 515 So. 2d at 1189 (citing *Hall v. State ex rel. Waller*, 247 Miss. 896, 903, 157 So. 2d 781, 784 (1963)).

*Doss*, 19 So. 3d at 694 (¶ 5) (quoting *Loden v. State*, 971 So. 2d 548, 572-73 (¶ 59) (Miss. 2007)). We apply a *de novo* standard of review to questions of law. *Doss*, 19 So. 3d at 694 (¶ 5) (quoting *Brown v. State*, 731 So. 2d 595, 598 (¶ 6) (Miss. 1999)).

## DISCUSSION

**I.** **Whether the circuit court clearly erred by finding that Walker was not denied effective assistance of counsel in the penalty phase.**

¶14. Mississippi utilizes the following standard in cases in which one convicted of a crime challenges the sufficiency of his attorney's representation:

> In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the United States Supreme Court established the standard for assessing an ineffective-assistance-of-counsel claim. The test is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Havard v. State*, 988 So. 2d 322, 328 (Miss. 2008) (quoting *Strickland*, 466 U.S. at 686, 104 S. Ct. 2052). To prevail on an ineffective-assistance-of-counsel claim, the defendant must prove that (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced the defense of his case. *Havard*, 988 So. 2d at 328 (quoting *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052). If the defendant cannot prove both deficient performance and prejudice to his case, the Court will not find that the conviction was unreliable.

*Goodin v. State*, 102 So. 3d 1102, 1117 (¶ 44) (Miss. 2012).

¶15. "First, petitioners must show that counsel's performance was deficient, i.e., 'counsel's "representation fell below an objective standard of reasonableness."'" *Ronk v. State*, 267 So. 3d 1239, 1248 (¶17) (Miss. 2019) (quoting *Wiggins v. Smith*, 539 U.S. 510, 521 (2003)). "'Reasonableness' is based on 'prevailing professional norms.'" *Id.* (quoting *Wiggins*, 539 U.S. at 521). Walker's trial counsel is presumed to be competent, and our scrutiny of trial counsel's performance "must be highly deferential." *Goodin*, 102 So. 3d at 1117 (¶ 45) (internal quotation mark omitted) (quoting *Wilson v. State*, 81 So. 3d 1067, 1075 (¶ 10) (Miss. 2012)). "A true presumption is a rule of substantive law which compels a certain conclusion, usually a judgment, absent rebutting evidence." *Johnson v. Foster*, 202 So. 2d

7

520, 524 (Miss. 1967) (citing 9 Wigmore, *Evidence* § 2491 (3d ed. 1940)). "Surmounting *Strickland*'s high bar is never an easy task." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (internal quotation marks omitted) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)).

¶16. In his order, the trial judge noted the *Strickland* Court's own description of the difficulty of second guessing trial counsel's investigation of mitigating evidence.

> [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and *strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.* In other words, counsel has a duty to make reasonable investigations or *to make a reasonable decision that makes particular investigations unnecessary.* In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Strickland*, 466 U.S. at 690-91 (emphasis added).

¶17. At the post-conviction hearing below, Walker carried the burden of persuading the trial judge by a preponderance of the evidence that his trial attorney had failed to provide constitutionally adequate representation. *Doss*, 19 So. 3d at 694 (¶ 5) (citing Miss. Code Ann. § 99-39-23(7) (Rev. 2007)). Accordingly, to have succeeded in demonstrating ineffective assistance of counsel, Walker was required to offer evidence that persuaded the trial judge as finder of fact. Nothing required the judge to believe Walker's evidence or to find it credible. The finder of fact "is free to accept all, part, or none" of Walker's evidence. *Thompson v. Dung Thi Hoang Nguyen*, 86 So. 3d 232, 236-37 (¶ 13) (Miss. 2012).

¶18. Stegall, Walker's trial counsel, testified at the post-conviction-relief hearing, although his memory had been affected by a stroke suffered after Walker's trial. As the trial court

noted, Stegall's strategy was to humanize his client. To that end, he called witnesses in mitigation to testify, among other things, that Walker had a supportive family, loved his daughter, and risked his own life to save the life of a child. Stegall testified at the post-conviction hearing that he would not have wanted to introduce evidence of bad and criminal conduct that his post-conviction attorneys may have wanted to introduce.

¶19. The crux of Walker's argument concerning Stegall's alleged deficient performance and its relation to the testimony of his mitigation witnesses is that had Stegall asked them to testify at trial, they could have told the jury that Walker had a less than ideal childhood. Walker appears to argue that Stegall's inability to remember interviewing mitigation witnesses means that he did not perform such interviews, but Stegall's inability to remember is at best a nullity. Because Walker bore the burden of proof and persuasion at the hearing, Stegall's inability to remember does not weigh in favor of a finding of ineffectiveness. Walker's mother and sister did testify that defense counsel did not speak to them before sentencing, but their testimony alone does not undermine the trial court's finding that Stegall's personalization strategy was an acceptable trial strategy.

¶20. The trial judge also considered the report of Dr. Maggio, who examined Walker for competency to stand trial. Dr. Maggio found no defect of intellect, memory, or judgment in Walker. The trial judge found that Dr. Maggio's report provided reasonable grounds for trial counsel to forego additional psychological testing before sentencing. Moreover, as the State argues, the United State Court of Appeals for the Fifth Circuit held in *United States v. Bernard*, 762 F.3d 467 (5th Cir. 2014), that counsel's failure to present testimony from a

9

neuropsychologist that compromised the trial strategy of humanizing the defendant did not amount to ineffective assistance of counsel.

¶21. The trial judge determined that Stegall's strategy was reasonable. At most, Walker's post-conviction counsel presented an alternative reasonable strategy but failed to show that Stegall's strategy was not reasonable. "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland*, 466 U.S. at 689. In short, Walker failed to bear his burden of persuading the trial judge by a preponderance of the evidence that his trial counsel failed to render constitutionally adequate performance.

¶22. Given the burden incumbent upon Walker at the post-conviction-relief hearing and the highly deferential standard of review given to the trial court's factual findings, the Court discerns no grounds for reversing the trial judge's determination that Walker's trial counsel provided adequate representation at sentencing. Because Walker failed to prove that the trial court clearly erred by finding that Stegall's performance was not deficient, the Court need not address the prejudice prong of the *Strickland* analysis. *Goodin*, 102 So. 3d at 1117 (¶ 44) (holding "[i]f the defendant cannot prove both deficient performance and prejudice to his case, the Court will not find that the conviction was unreliable").

II. **Whether the circuit court erred by denying Walker's request to reopen the evidentiary hearing.**

¶23. After the circuit court located Dr. Maggio's report, which had been sealed, in the trial record, it allowed Walker's counsel to view it. Walker filed a response arguing that the report was not relevant; but, if the circuit court found the report relevant, Walker argued that

10

the circuit court should reopen the evidentiary hearing. The circuit court entered an order finding the report relevant, providing the State's counsel a copy of it, and asking for supplemental briefing to address it. The circuit court, citing Stegall's memory problems and his testimony that he had no independent recollection of the psychological evaluation, also denied Walker's request to reopen the hearing. The circuit court found that it should consider Dr. Maggio's report from the perspective of defense counsel's evaluation of it at the time of the trial, not from the perspective of what the mitigation experts, Dr. Mendel and Dr. Shaffer, might think about it.

¶24.    Walker argues that because the circuit court relied greatly on the report, it erred by not reopening the hearing. We find no error in the circuit court's assessment of the limited usefulness of additional testimony from Stegall, who exhibited memory problems throughout his testimony that were attributable to a stroke. Moreover, the circuit court correctly found it should consider the report from the perspective of trial counsel, a finding not contested by Walker. Finally, as the State argues, the circuit court was under the duty identified in *Doss v. State*, 19 So. 3d 690, 694 (¶ 5) (Miss. 2009), to examine the entire record of the capital-murder trial, and it thus was under no obligation to order briefing or a hearing on any particular portion of that record. The circuit court did not err by denying Walker's request to reopen the hearing.

## CONCLUSION

¶25.    We affirm. The circuit court did not clearly err by finding that Stegall's trial strategy was reasonable. Further, the circuit court did not err by denying Walker's request to reopen

11

the hearing.

¶26. **AFFIRMED.**

**RANDOLPH, C.J., MAXWELL, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR. KITCHENS, P.J., CONCURS IN RESULT ONLY WITH SEPARATE WRITTEN OPINION JOINED BY KING, P.J. KING, P.J., CONCURS IN PART AND IN RESULT WITHOUT SEPARATE WRITTEN OPINION.**

**KITCHENS, PRESIDING JUSTICE, CONCURRING IN RESULT ONLY:**

¶27. With respect, I concur in result only. I would hold that because Walker's lead trial counsel, Earl Stegall, did almost no investigation relevant to the trial's penalty phase, the circuit court clearly erred by finding there was no deficient performance. Stegall's testimony established that he did not forego a meaningful investigation based on reasonable professional judgement; rather, he did not investigate because he ran out of time. This Court should not approve trial counsel's slack approach to defending the penalty phase of a death-penalty case. But because the circuit court did not clearly err by finding that Walker failed to meet his burden to prove prejudice, I agree that this case must be affirmed.

¶28. A defendant's right to the effective assistance of counsel in a criminal case is guaranteed by the United States Constitution and the Mississippi Constitution. U.S. Const. amend. VI; U.S. Const. amend. XIV; Miss. Const. art. 3, § 26; *Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In *Strickland*, the United States Supreme Court set forth a two-part test to be applied to a constitutional claim of ineffective assistance of counsel. *Conner v. State*, 684 So. 2d 608, 610 (Miss. 1996). Under *Strickland*, the court first must determine whether counsel's performance was deficient, and, if so, whether the deficiency prejudiced the defendant. *Id.* (citing *Roland v. State*, 666 So.

12

2d 747, 750 (Miss. 1995)).

¶29. There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and that "the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 100, 76 S. Ct. 158, 164, 100 L. Ed. 83 (1955)). "'Reasonableness' is based on 'prevailing professional norms.'" *Ronk v. State*, 267 So. 3d 1239, 1248 (Miss. 2019) (quoting *Wiggins v. Smith*, 539 U.S. 510, 521, 123 S. Ct. 2527, 2535, 156 L. Ed. 2d 471 (2003)). "No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." *Id.* (internal quotation marks omitted) (quoting *Strickland*, 466 U.S. at 688-89). "[L]apses 'must be viewed in light of the nature and seriousness of the charges and the potential penalty.'" *Id.* (quoting *Ross v. State*, 954 So. 2d 968, 1004 (Miss. 2007). "[E]very effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Bell v. Cone*, 535 U.S. 685, 698, 122 S. Ct. 1843, 1852, 152 L. Ed. 2d 914 (2002) (second alteration in original) (internal quotation marks omitted) (quoting *Strickland*, 466 U.S. at 689).

¶30. If the court determines that defense counsel's performance was deficient, it then must determine whether the deficiency had a "reasonable probability" of affecting the outcome of the case. *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* The defendant must show that "counsel's errors

were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Ronk*, 267 So. 3d at 1248 (internal quotation marks omitted) (quoting *Doss v. State*, 19 So. 3d 690, 695 (Miss. 2009)). And he must show "'[a] reasonable probability that at least one juror would have struck a different balance.'" *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Isham v. State*, 161 So. 3d 1076, 1089 (Miss. 2015)). Reviewing the trial court's denial of post-conviction relief, this Court does not disturb the trial court's findings of fact absent clear error. *Id.* (quoting *Loden v. State*, 971 So. 2d 548, 572 (Miss. 2007)). Further, "[i]n capital cases, non-procedurally barred claims are reviewed using "'heightened scrutiny" under which all bona fide doubts are resolved in favor of the accused.'" *Ronk*, 267 So. 3d at 1247 (quoting *Crawford v. State*, 218 So. 3d 1142, 1150 (Miss. 2016)).

¶31.    At the hearing, Walker sought to show that defense counsel had rendered deficient performance by failing to investigate. He argued that he had been prejudiced because if trial counsel's performance had been constitutionally sufficient, counsel would have presented evidence in mitigation about Walker's childhood trauma and impaired brain function. In support of that claim, Walker presented testimony from trial counsel, from multiple family members, from a family friend, and from a psychologist and a neuropsychologist. On *Strickland*'s prejudice prong, the circuit court found that given the brutality of the crime, no reasonable probability existed that Walker's alleged childhood trauma and impaired brain function would have prompted a jury to impose a life sentence instead of the death penalty. The circuit court discounted the credibility of the expert testimony on the ground that much

14

of it was based on unverified information, rumor, and speculation.

¶32.    Regarding deficient performance, the circuit court found that trial counsel's penalty phase strategy had been to humanize Walker; in doing so, said the circuit court, trial counsel had offered witnesses who could provide details of Walker's life and counter the brutality of the crime. The circuit court found that the jury had heard unchallenged evidence that Walker had "a supportive family; a young daughter whom he loved; relatives who loved him; he enjoyed respectable employment and had even risked his own life by rushing into a burning house to save a child." The circuit court said that it could not find that Stegall's strategy had been unreasonable. The circuit court also relied on Dr. Maggio's report, which made no major psychiatric diagnosis but found that Walker had antisocial personality disorder and had abused alcohol and illegal drugs. The report described the facts of the murder and how Walker had displayed a lack of remorse. The circuit court found that "a fair reading of the report would have ruled out a *M'Naughten*[1] insanity defense and there would be no reason for trial counsel to develop additional psychological or psychiatric evaluations."

¶33.    The circuit court found that if trial counsel had offered the jury the same evidence that PCR counsel had presented, the prosecutor would have been armed with Dr. Maggio's report and would have learned of Walker's other bad behavior and criminal conduct mentioned in the report. Stegall had testified at the hearing that he would not have wanted that kind of evidence in the State's hands. The circuit court found that Stegall's strategy had been reasonable under the facts with which he had been confronted and that although PCR counsel

---

[1] *See* **Woodham v. State**, 779 So. 2d 158, 163 (Miss. 2001).

15

would have offered a different mitigation theory, Stegall's representation of Walker had not been constitutionally deficient.

¶34. Walker argues, and I agree, that Stegall's performance was constitutionally deficient because he failed to investigate meaningfully in preparation for the penalty phase. The record establishes unambiguously that Stegall's mitigation investigation was scanty. Stegall testified that because he had thought Walker would be offered a plea deal until a few days before trial, he conducted no penalty phase investigation whatsoever before that point. When abruptly required to try both phases of the case after Walker's accomplice, Jonathan Riser, had pled guilty and become a witness for the State, Stegall decided to use the humanization strategy that he had employed in other capital cases. But no evidence other than Stegall's testimony about what he usually did was presented to show that he interviewed any of the witnesses he had planned to call. Although Stegall testified that he "would have" interviewed the penalty phase witnesses by phone before the trial, he could not remember having done so. Walker's mother and sister testified that Stegall had not spoken with them about their testimony before they took the stand, and his brother could not recall having testified. Further, Stegall did not look into hiring experts or hiring a mitigation investigator, although he did have the benefit of Dr. Maggio's report.

¶35. These facts implicate the minimum standards for effective assistance in the preparation of a mitigation case for the penalty phase of a death penalty trial. The United States Supreme Court has established unequivocally that counsel has an "obligation to conduct a thorough investigation of the defendant's background." *Wiggins*, 539 U.S. at 522

(internal quotation mark omitted) (quoting *Williams v. Taylor*, 529 U.S. 362, 396, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000)). "As we established in *Strickland*, 'strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.'" *Id.* at 528 (quoting *Strickland*, 466 U.S. at 690-91). "*Strickland* does not establish that a cursory investigation automatically justifies a tactical decision with respect to sentencing strategy. Rather, a reviewing court must consider the reasonableness of the investigation said to support that strategy." *Id.* at 527 (citing *Strickland*, 466 U.S. at 691).

¶36. This Court has held that, "[w]hile courts must defer to lawyers' judgments and strategies, '*at a minimum*, counsel has a duty to interview potential witnesses and to make independent investigation of the facts and circumstances of the case.'" *Ross*, 954 So. 2d at 1005 (emphasis added) (quoting *Ferguson v. State*, 507 So. 2d 94, 96 (Miss. 1987)). "[C]ounsel may be deemed ineffective for relying almost exclusively on material furnished by the State during discovery and conducting no independent investigation." *Id.* (citing *Ferguson*, 507 So. 2d at 96). "While counsel is not required to exhaust every conceivable avenue of investigation, he or she must at least conduct sufficient investigation to make an informed evaluation about potential defenses." *Id.* (citing *State v. Tokman*, 564 So. 2d 1339, 1343 (Miss. 1990)). *Strickland* imposes a duty on counsel either to perform a reasonable investigation or to arrive at a reasonable decision that a particular line of investigation is not necessary. *Id.*

¶37. Further, "counsel will not be deemed ineffective if there is proof of investigation or

17

if there is no factual basis for the defendant's claim. However, each of these principles presuppose[s] a certain level of investigation." *Id.* at 1006. "[S]trategic choices made after less than complete investigation will not pass muster as an excuse when a full investigation would have revealed a large body of mitigating evidence." *Id.* (internal quotation marks omitted) (quoting *Dickerson v. Bagley*, 453 F.3d 690, 696-97 (6th Cir. 2006), *abrogated on other grounds by Bobby v. Van Hook*, 558 U.S. 4, 130 S. Ct. 13, 175 L. Ed. 2d 255 (2009)). "It is not reasonable to refuse to investigate when the investigator does not know the relevant facts the investigation will uncover." *Id.* (internal quotation marks omitted) (quoting *Dickerson*, 453 F.3d 696-97). Counsel has a "duty to conduct a reasonable, independent investigation to seek out mitigation witnesses, facts, and evidence for the sentencing phase . . . ." *Davis v. State*, 87 So. 3d 465, 469 (Miss. 2012) (citing *Strickland*, 466 U.S. at 691). The failure to interview family members and other potential witnesses to assess the availability of mitigation evidence before selecting a strategy is deficient performance. *Sonnier v. Quarterman*, 476 F.3d 349, 358 (5th Cir. 2007).

¶38. *Strickland* places a duty on counsel either "to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Ross*, 954 So. 2d at 1005 (internal quotation marks omitted) (quoting *Strickland*, 466 U.S. at 691). Stegall testified to having done little to no mitigation investigation for no reason other than that he mistakenly had thought the case was not going to trial. The circuit court found that given the facts known to Stegall, his penalty phase strategy was reasonable. And humanizing the defendant has been deemed a reasonable penalty phase strategy for a violent capital murder

case.[2] ***United States v. Bernard***, 762 F.3d 467 (5th Cir. 2014). But the evidence was that Stegall did not select the humanization strategy from a variety of options uncovered by a reasonable mitigation investigation. Rather, Stegall selected that strategy after very little investigation into other possible options. The majority discounts the critical fact that the record evinces nothing strategic about defense counsel's decision to perform the slight amount of mitigation investigation done in this case. Stegall gambled that his client would be offered an acceptable plea bargain. He lost, and so did Walker.

¶39. The majority approves the circuit court's reliance on ***Strickland***'s instruction that "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation" and that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." ***Strickland***, 466 U.S. at 690-91. But the circuit court failed to note that what must come before selecting a trial strategy is a reasonable decision that no further investigation is needed. Again, that is what was missing in this case. Stegall's testimony was that due to his reliance on the probability of a plea offer, he ended up short on time and consequently relied on his old standby, humanizing the capital defendant. His decision not to investigate was not based on a reasonable professional assessment yielding a reasonable conclusion that no investigation was required. Instead, Stegall adopted a well-worn strategy he thought he could pull off given that his own lack of

---

[2] In my experience as a former criminal defense lawyer and former district attorney, counsel's seeking to have the jury view the client as a human being rather than as a monster is a component of virtually every capital murder defense, usually in addition to whatever other mitigating evidence is presented.

diligence had caused him to run out of time to conduct any investigation.

¶40.    Because of the undisputed evidence that Walker's defense counsel failed to perform any meaningful investigation and thus considered no options for his approach to the penalty phase other than his oft-used humanization strategy, the circuit court clearly erred by finding that counsel's performance was not deficient. *Ross*, 954 So. 2d at 1005; *Sonnier*, 476 F.3d at 358. Stegall, faced with a looming sentencing phase portion of the trial in a death penalty case, had done no appreciable investigation before the penalty phase and instead cobbled together, at the last moment, the strategy of trying to humanize Walker before the jury. Stegall's sole line of investigative inquiry was his perusal of Dr. Maggio's competency evaluation that did contain evidence of Walker's mental-health status at the time of the crime. As the majority recognizes and the circuit court found, because that report contained information relevant to mitigation, Stegall reasonably could have decided that additional expert mental-health evaluation was unnecessary.[3] But nothing indicates that Stegall did any *other* investigation. Nothing save his notion about what he usually would have done indicates that he interviewed a single mitigation phase witness about his or her testimony before the sentencing hearing. Indeed, the witnesses who remembered testifying at the trial said that they had not spoken with Stegall before he put them on the stand.[4]

---

[3] We have recognized that "where defense counsel has sought and acquired a psychological evaluation of the defendant for mitigation purposes, counsel generally will not be held ineffective for failure to request additional testing." *Ross*, 954 So. 2d at 1005 (citing *Moore v. Parker*, 425 F.3d 250, 254 (6th Cir. 2005)).

[4] Stegall's deficient performance in this case was not unusual for him. He testified that approximately two years after representing Walker in this case, he had been disbarred for collecting fees from clients and not performing the work for which he had been hired. In

¶41. Because this minimal level of investigation is insufficient in a death penalty case, I would hold that the circuit court clearly erred by finding that Walker failed to meet his burden to prove deficient performance by a preponderance of the evidence. But the circuit court did not clearly err by finding that Walker incurred no prejudice from the deficiency. *Sonnier*, 476 F.3d at 358 (finding that although counsel's failure to investigate was deficient performance, counsel's failure to present the evidence that defendant alleged should have been discovered and presented was not prejudicial). I would hold that the record demonstrates that the circuit court's decision on prejudice was not clear error. Therefore, I agree with the majority's decision to affirm, although I reject its reasoning in doing so.

**KING, P.J., JOINS THIS OPINION.**

---

*Stegall v. The Mississippi Bar*, 618 So. 2d 1291, 1292-93 (Miss. 1993), this Court detailed his neglect of two clients who had paid for his services in criminal cases and found that his misconduct warranted disbarment. The Complaint Tribunal had found that "Stegall 'under conditions which are very close to false pretenses' basically took $2,500 each from the Harvestons and the Fairmans and did nothing on the cases of Roger Harveston and Jerry Fairman, respectively." *Id.* at 1294.